ELIAS *v.* NEW LAUREL RADIO STATION, INC.,
d.b.a. BOWL-A-WAY LANES

No. 42435 November 19, 1962 146 So. 2d 558

*Pershing B. Sullivan, Grover C. Doggette, Collins & Tew,* Laurel, for appellant.

*Beard, Pack & Ratcliff,* Laurel, for appellee.

McELROY, J.

This is an appeal from the Circuit Court of the Second Judicial District of Jones County, Mississippi. The case was tried before the court and a jury. At the conclusion of the case, after the plaintiff and defendant had rested, the appellee made a motion for a peremptory instruction which was sustained by the court. The only assignment of error on this appeal is that the court erred in granting a peremptory instruction for the appellee.

The New Laurel Radio Station, Inc., a corporation, trading and doing business as Bowl-A-Way Lanes, operated a bowling alley in the City of Laurel. In the operation of this bowling alley, the appellee invited members of the general public to bowl for a consideration. In connection with the bowling operation and in the

same building within a few feet of the portion of the building reserved for bowling by its patrons, appellee operated a restaurant or a snack bar where it sold or otherwise dispensed to persons on the premises, food, coffee, Coca-Colas, water and other solid, liquid and edible substances. It is contended that the appellee negligently allowed persons using the establishment to carry the liquid and solids over an area of the establishment used and occupied by paying bowling participants. As a result of this operation, the liquid and solid substances were dropped and spilled on the floor where bowling participants may unknowingly step in the substances. It is also contended that this condition existed on February 25, 1960, the date of the accident, and that the appellee was negligent and careless and with reckless disregard to the safety of its fee-paying bowling participants, allowed its customers to deposit a large quantity of drinking cups partially filled with ice and liquid substances into two large receptacles on each side of the cashier's stand, the place for the paying of bowling fees, and that as a result, water and liquid substances were caused to be spilled on the floor adjacent; that at the time complained of, there were liquid substances that had existed near the cashier's stand for such a time that the appellee knew, or in the exercise of reasonable care should have known was dangerous. The appellant claims that due to this condition of the bowling establishment's floor, he stepped in a wet substance around the control center which caused him to fall while bowling; that as a direct and proximate result of the negligence and the fall he suffered a fracture in the left hip, was made sick and lame, externally and internally and caused to suffer and to be permanently injured in his health and was damaged in the sum of $126,212.35, actual and punitive, for which sum he sought judgment against the appellee.

As to the charge of the appellant that the appellee was negligent, the defense is to the effect that appellant was

an experienced, expert and professional bowler who knew of the dangers inherent in stepping on any wet spot or substance while wearing his bowling shoes and continuing to bowl without cleaning the substance from his shoes or allowing it to dry; that he did know of the alleged wet condition of the concourse floor of the bowling alley; that he left the area of the appellee's bowling alley while wearing his bowling shoes and went to the concourse floor where he stepped in the wet substance and assumed the risk of the fall and injury which he suffered.

The testimony is to the effect that the New Laurel Radio Station, doing business as Bowl-A-Way Lanes, owned and operated the bowling establishment on Beacon Street in the City of Laurel, Mississippi, on February 25, 1960, at which time the appellant was injured while bowling in appellee's bowling alley; that the front entrance to the building faced towards the east and front on Beacon Street; that the lanes of alleys in which the bowling balls are rolled is in a general northeasterly and southeasterly direction and that located approximately in the center of the bowling establishment from the east to the west and immediately to the rear or south of the lanes in which the bowling was done was a control center or cashier's stand, at which center the score sheets for bowling were obtained and the participants paid their fees for bowling. The concourse is approximately twenty-one to twenty-two feet in width and runs in an easterly and westerly direction the entire width of the building which is 142 feet. The concourse is used by bowling participants or any person who might be in the building as a general thoroughfare or walkway. To the south of the central stand in the south end and center of the building was located a snack bar or concession stand at which the appellee dispensed food and beverages to the general public who came into the bowling establishment. The snack bar or concession stand opened

onto the concourse of the bowling alley and is not closed off from the rest of the bowling places. The spectators and bowling participants were allowed on the date in question to purchase food and beverages and to carry them all about the bowling alley; that this was a new bowling establishment and had been in operation five days. The appellant, on the night of February 25, 1960, entered about 8:30 p. m. to engage in bowling as a paying customer. The place was extremely busy on this date and particularly during the evening when the appellant was injured. The appellant bowled for some time and then moved over to another lane. At one time he pulled his bowling shoes off and went back up near the concession stand. The appellant was injured sometime between 11 and 12 o'clock in the evening. He was called to the appellee's control stand by someone he claimed was one of the employees for the purpose of paying for several lines or games of bowling which he had bowled previously that evening with other participants. On the west side of the control stand, for a period of approximately from about 9:30 o'clock until the plaintiff was injured, there was a large amount of liquid substance on the floor near the appellee's control stand. The appellant's testimony was to the effect that on the floor of the concourse around the cash stand and snack bar and down towards the approach to the bowling lanes "there were a lot of cups lying around and drinks spilled on the floor and water pretty near all over the place." This substance was on the floor all the time that he was in the bowling establishment. After he paid for his right to bowl further, he attempted to bowl in Lane 7, but there was some liquid or something on his shoe which kept him from sliding his foot and he fell and was injured. He observed the liquid substance on the floor at the cash stand and central desk and it appeared to be the same type substance as that found on his shoe after he fell. When he was carried from the building

on a stretcher after the injury, he observed the liquid substance on the floor at the cash stand and control desk and it appeared to be the same type substance as that found on his shoes after he fell. Several witnesses corroborated the testimony of the appellant as to the condition of the floor.

The appellee's testimony was to the effect that they knew that there was debris on the floor, that the cups were thrown there by the general public but this was back of the control center; that all this debris was back away from the cashier's stand but there was none of it in the actual bowling area. The president, the manager and the superintendent of the appellee's establishment were all there at the time that the appellant was injured and they knew about the condition and testified that it was clean from the cashier's stand to the actual bowling area.

The appellant was a professional bowler, his average score at one time being over 197 which was necessary in order to be a professional. He had run a bowling establishment in another state for over eleven years. He knew that he should take care of his shoes and what to do in the care of his shoes.

This is a close case.

From the foregoing facts the question before the Court is, was the appellant, Elias, the sole and proximate cause of his injury; and as an experienced bowler, did he assume the risk involved in the game of bowling or was he guilty of contributory negligence? Appellant's only assignment of error is that the lower court erred in granting a peremptory instruction to the appellee.

■■ ■ In considering the motion for a peremptory instruction "everything must be considered or proved which evidence established, either directly or by reasonable inference, against party requesting instruction." Jefferson Standard Life Ins. Co. v. Jefcoats, 164 Miss. 659, 143 So. 842; Keith v. Yazoo and M. V. R. Co., 168

Miss. 519, 151 So. 916; Gravette v. Golden Saw Mill Trust, 170 Miss. 15, 154 So. 274; Columbian Mutual Life Ins. Co. v. Gunn, 173 Miss. 897, 163 So. 454; Farish v. Canton Flying Service, 214 Miss. 370, 58 So. 2d 915; Bankston v. Dumont, 205 Miss. 272, 38 So. 2d 721; Maguire v. Carmichael, 240 Miss. 732, 128 So. 2d 581.

Since appellant was an invitee, it was the duty of the appellee to have and keep its bowling house in a reasonably safe condition. Patterson v. Sayers, d/b/a The Conrad Hotel, 223 Miss. 444, 78 So. 2d 467; Western Union Tel. Co. v. Blakely, 162 Miss. 854, 140 So. 336.

On the applicability of the doctrine of assumed risk, incurred risk, etc., 65 C. J. S., Negligence, Sec. 174, p. 849 states: "Accordingly, it has been held to be the rule, generally referred to as the doctrine of assumption of risk, and sometimes referred to as the doctrine of 'incurred risk', or 'taking the risk or hazard', or 'running the risk', that one who voluntarily exposed himself or his property to a known and appreciated danger due to the negligence of another may not recover for injuries sustained thereby, even though he was in the exercise of ordinary care or even of the utmost care. Corollaries of this rule are that to acquiesce in, or consent to, a course of negligent conduct is to assume the risks incident thereto, that one having a choice of reasonably convenient ways assumes the risk of a dangerous one, and that one who voluntarily attempts a rash, imprudent, and dangerous undertaking is to be presumed to have assumed the risk incidental thereto.

"* * *

"The doctrine, accordingly, can apply only where a person may reasonably elect whether or not he shall expose himself to a particular danger; and it has no application where a continued exposure to risk is due to a lack of reasonable opportunity to escape after the danger is appreciated, or is the result of influence, circumstances, or surroundings which are a real inducement

to continue. Thus, if plaintiff surrendered his better judgment on an assurance of safety or a promise of protection he did not assume the risk unless the danger was so obvious and so extreme that there could be no reasonable reliance on the assurance.''

■■ ■ No person can assume a risk that he does not know exists. The appellant was bowling some fifteen feet from the concourse area. It is true that he was called back up there but he did not know, and so testified, that he had stepped in the liquid substance until after his injury. His knowledge of the risks involved in bowling when his sliding shoe was wet and his knowledge of the prior condition of the concourse area were not what caused his injury. His injury was caused by his unknowingly stepping in the wet substance on the floor. In 19 Miss. L. J. p. 370, ''The elements which must be found in order to constitute a defense of assumption of risk are generally stated in some such terms as follows: (1) Knowledge on the part of the injured party of a condition inconsistent with his safety; (2) appreciation by the injured party of the danger in the condition; and (3) a deliberate and voluntary choice on the part of the injured party to expose his person to that danger in such a manner as to register assent on the continuance of the dangerous condition.''

■■ ■ From the testimony we cannot believe that the appellant made a deliberate and voluntary choice to expose his person to that danger in such a manner as to register assent to the continuance of the dangerous condition around the concourse or cashier's stand. He was called to the control center and he might have inadvertently forgot about the condition which existed there. If he did forget, he didn't assume the risk but would have been guilty of contributory negligence. The assumption of risk arises from a mental state of willingness, or a mental state approaching consent. From the state of the evidence in the record, we are unable to say

that the conduct was from a mental state of willingness or a mental state approaching consent or whether it was contributory negligence due to his conduct. Even the question of assumption of risk may arise in a case in which that question should even go to the jury.

 ██ The next question before the Court is whether the plaintiff in this case was guilty of contributory negligence. In the case of Saxton, et al. v. Rose, et al., 201 Miss. 814, 29 So. 2d 646, the Court said: "Contributory negligence arises when, but not until, the injured person by his own conduct has done something, or has omitted to do something, which contributes to the particular event, and at the particular time and place, which was the immediate cause of the injury. The distinction has been tersely said to be that assumption of risk is 'venturousness' on the part of the person injured, while contributory negligence is his 'carelessness'."

In the case of Watson v. Holeman, 169 Miss. 585, 153 So. 669, a servant was driving a car and picked up a guest, the plaintiff. The driver was driving at an excessive speed and the guest protested but did not get out of the car. Judgment for plaintiff was affirmed. The Court held that assumption of risk did not apply; that it applied principally to contractual relations and that what appellant was presenting belonged to the general classifications of contributory negligence, not assumption of risk.

In Gower v. Strain, 169 Miss. 344, 145 So. 244, in which a physician's guest who knew the physician had only about three hours sleep on the preceding night, did not assume risk of physician's drowsiness while driving.

 ██ In Hatcher v. Daniels, 228 Miss. 196, 87 So. 2d 490, it was held that an invited guest in a car assumes obvious risks and hazards, but does not assume the risk of a danger created by negligent operation of a vehicle over which he has no control. See Junkins v. Brown, et al., 238 Miss. 142, 117 So. 2d 712; Green v. Maddox,

168 Miss. 171, 149 So. 882; Monsour v. Farris, et al., 181 Miss. 803, 181 So. 326. The appellant had worn his bowling shoes only while in the process of actual bowling. Between games he had removed his bowling shoes. This shows that the appellant was taking due care to prevent injury to himself. At the start of the last game, he had put on his bowling shoes and while in the process of bowling was called to the control stand by appellee's cashier, he assumed or had reason to believe such. It was not the appellant's idea to go to the cashier's stand after he had changed into his bowling shoes. Appellant did not voluntarily go but went only when summoned by appellee's cashier and in the process of responding to the summons, unknowingly stepped in the liquid substance. From this evidence, the jury would be justified in believing that the appellant was guilty of contributory negligence and not the assumption of risk. The jury had a right to pass on the question whether the appellee was negligent in creating an unsafe and dangerous condition around the control booth by not keeping it clean after having notice thereof or such time elapsing as a reasonable person would have obtained such notice. It is manifest that the defendant was negligent in leaving the water and other liquids on the floor around the control booth where plaintiff got the water on his bowling shoes. Elias was not a licensee or a gratuitous invitee. He was an invitee for compensation paid by him. The defendant was in the business of keeping a bowling alley and operating it and charging a substantial fee for those using bowling facilities. Hence it was appellee's duty to keep the premises in a reasonably safe condition for those using such facilities. Gulf Refining Co., et al. v. Moody, 172 Miss. 377, 160 So. 559; Sears Roebuck and Co., et al. v. Burke, 208 Miss. 306, 44 So. 2d 448. In the Burke case the plaintiff was a customer in Sears store and while there a package toppled over on her and injured her. The Court said that an invitee

in a store is not to be circumscribed as to his movements while waiting for a clerk to exhibit goods. He has a right to inspect goods and to frequent places used by other persons of the store. Defendants owed plaintiff as an invitee the duty of exercising reasonable care to keep in a reasonably safe condition the place where patrons of the store were invited to go. In this connection, Joe DiBella, Manager of the bowling alley, admitted that people who purchased drinks and sandwiches at the snack bar were allowed to carry them anywhere on the concourse area, which would include the control stand.

It is therefore manifest that the appellee was under the duty to keep the premises in a reasonably safe condition for those using them. With such a large crowd in the bowling alley, the appellee must have been guilty of negligence in maintaining the area around the control stand and in the concourse and in failing to keep the area clean. This negligence contributed to the appellant's injury since the substance on his shoes stemmed from the negligent failure of the appellee to keep the area in question clean and reasonably free from water and other debris. The basis of the learned trial court's peremptorial instruction for the appellee was that the appellant had assumed the risk of bowling and knowingly got the liquid on his shoes when he went to the control center.

Section 1454, Miss. Code 1942, Rec., provides that the fact that an injured person may have been guilty of contributory negligence "shall not bar recovery, but damages shall be diminished by the jury in proportion to the amount of negligence attributable to the person injured."

Section 1455, Code of 1942, Rec., provides: "All questions of negligence and contributory negligence shall be for the jury to determine."

In Wilbe Lbr. Co. v. Calhoun, 163 Miss. 80, 140 So. 680, in which the judgment for the plaintiff was affirmed, a planing mill employee was injured when the

ripsaw kicked timber back against him. It was unguard-
ed. The defendant argued plaintiff knew danger of op-
erating the sa.. without a guard and assumed its risk.
This was rejected because the master owed a duty to
furnish a reasonably safe place to work. ''The risk that
the servant assumed is a danger incident to the service
which remai..s aiter the master has exercised reasonable
care for t .. safety of the servant.'' See also Goff v.
Randall, 206 ~ iss. 178, 39 So. 2d 881.

In the ca.. of Sea Food Co. v. Alves, 117 Miss. 1, 77
So. 857, whir.. affirmed a judgment for personal injuries
to an emplo.. .., a fourteen-year-old boy working for the
defendant .. .ter cannery. His job was to push small
crate cars .n tracks from the wharf to the cannery. While
working, h . ped into a hole in the wharf which caused
him a per .. nt injury. This hole was used by defend-
ant as a s.. rough which a wire cable connected with a
derrick wh.. ted the oysters and basket from the boat
into the c. . t was held that defendant was negligent
in establis.. and maintaining an unsafe place to work
and that .. iff may have been guilty of contributory
negligence t..is could be considered only in diminish-
ing his .. .. s. The Court then said: ''The duty of
the mast.. ..nded to preventing the premises upon
which he r.. ..d the servant to work from containing
dangerous ..s, holes, obstructions or other man-traps
in which h.. ..vant is liable unguardedly to fall, while
his mind is . orbed in the duties of his employment or
during mo.. . arily forgetfulness of the presence of
the danger City of Natchez v. Lewis, 90 Miss. 310,
43 So. 471.

In a rec.. case on the question of assumption of
risk, Sirar.u.. .. Swedish Hospital, 373 P. 2d 767 (Aug.
2, 1962), th.. ..aintiff was an employee of the defendant
hospital an ...as injured while going about her duties.
The trial cou.. ..ismissed plaintiff's action on the ground
of assumr..n of risk. In a well-reasoned opinion, the

Supreme Court of Washington reversed and remanded the case for a new trial. The doctrine of assumption of risk between master and servant has been abolished in Mississippi except as to certain railroad employees. However, the principles of law involved in an assumption of risk between employer and employee and those between others not so situated are identical. The court in this case dealt at length with the distinction between assumption of risk and contributory negligence and quoted with approval the following language: "To summarize, it seems that while the employer is not an insurer, he must exercise reasonable care in furnishing safe places and safe appliances within which and with which to work; failure to exercise such ordinary care constitutes negligence for which he is liable; it is not required that actual, specific knowledge of the defective premises or appliances be brought home to the master —it is sufficient if in the exercise of ordinary care he should have known thereof; the servant assumes only such risks as are inherent in his work after the master has exercised such care in providing a safe place to work, and within these confines the ultimate fact question is for the jury but under instructions which preserve such limitations."

On the question of games and theaters, bowling alleys, baseball parks, etc., see Hudson v. Craft, et al., 33 Cal. 2d 654, 204 P. 2d 1, 7 A. L. R. 2d 696; Hudson v. Kansas City Baseball Club, Inc., 164 S. W. 2d 318, (Mo. 1942), 142 A. L. R. 858; McGillivray v. Eramian, 309 Mass. 430, 35 N. E. 2d 209, 141 A. L. R. 1313; Reiher v. Mandernack, 234 Wisc. 568, 291 N. W. 758, 10 N. C. A. A. (N. S.) 64.

We feel that this is a close question. However, we also feel that it is a case that should have gone to the jury under proper instructions as to the assumption of

risks and contributory negligence involved in the case. The case is therefore reversed and remanded.

Reversed and remanded.

*McGehee, C. J., and Ethridge, Rodgers, and Jones, JJ.,* concur.