281 So.2d 669 (1973)
Allen BRASWELL
v.
ECONOMY SUPPLY COMPANY.
No. 47108.
Supreme Court of Mississippi.
June 29, 1973.
Rehearing Denied September 11, 1973.
*670 Crisler & Crisler, Jackson, Zachary, Weldy & Ingram, Giles W. Bryant, Jolly W. Matthews, III, Hattiesburg, for appellant.
Heidelberg, Sutherland & McKenzie, Hattiesburg, for appellee.
SUGG, Justice:
Appellant filed suit against appellee in the Circuit Court of Forrest County, Mississippi and alleged that he was a business invitee of appellee and was injured when a stack of lumber fell upon him as a direct and proximate result of appellee's negligence in stacking the lumber and failing to warn him of the danger. Appellee answered, denied negligence or liability, and alleged that appellant was a trespasser, or at most, a mere licensee; that his injuries were caused by his negligence in climbing on the stack of lumber causing it to fall; and that appellant assumed the risk of entering the bin where the lumber was stacked. The jury found for the appellee; hence this appeal.
A few days before April 29, 1970, appellant asked appellee's salesman, Truett Weatherford, if appellee had any 2" X 6" cedar lumber which appellant needed to build an exposed deck or porch on a fishing camp for one of his customers. On the morning of April 29th, appellant entered appellee's sales room where Weatherford was engaged in making up an order for another customer. Appellant stated that he desired to inspect the cedar; and in response thereto the salesman told him to "go ahead and look" pointing in the direction of the lumber shed where the cedar was stored. Appellant did not wait for the salesman to go with him and show him the lumber but proceeded alone to the lumber shed.
The lumber shed was built parallel to a railroad track and was designed and constructed so as to consist of a series of double doors facing the railroad track. Each set of double doors was approximately 10 feet wide and immediately behind each set of double doors were bins for the storage of lumber, each of which was the width of the door openings. The lumber bins consisted of vertical poles set into the ground on each side of the bins. The bins had no floor, but crossties were placed on the ground parallel with the railroad track about four or five feet apart on which lumber was stacked perpendicular to the railroad track, resting on the crossties so as to keep it off the ground. Lumber was stacked in the bins solid from side to side between the vertical posts with the ends of the boards just inside the double doors far enough to permit them to be closed.
Lumber was stacked in the various bins in the lumber shed according to size and in the particular bin in question, 2" X 6" cedar was stacked. The lumber was of various lengths with each length being stacked so that all 16 foot lengths were in adjacent stacks, all 14 foot lengths were likewise in adjacent stacks and other lengths in other stacks. The cedar lumber in question arrived by rail about two months before the accident and was stacked in the bin extending from the crossties upward to a point near the ceiling, approximately 10 or 11 feet high. The bin was fully loaded with the top of the stacks nearly level and with the lumber stacked in the usual and customary manner. Sales of different lengths of lumber were not at a uniform rate because some lengths sold faster than others so that the top of the stacks in the bin did not remain at a level or uniform height. The 16 foot lengths occupied the right hand portion of the bin and sold more slowly than the other lengths; therefore, those stacks remained higher than the other stacks, and on the day of the accident was about 8 feet high, according to the testimony of appellant. Appellant testified that immediately to the left of the 16 foot lengths, as one looked into the bin, there was no lumber on the crossties and he walked on the ground when he entered the bin with the high stack on his right and a lower stack on his left. According *671 to the testimony of appellee, the lumber stack was approximately 24 to 30" high at the place where appellant entered the bin and immediately to the left was a stack approximately 40" high.
Appellant testified that he walked 10 or 15 feet into the bin by way of an aisle or passageway between the stacks of lumber, but appellee refuted this, claiming that the bin had no aisle or passageway, and appellant entered the bin by climbing on a stack of lumber. Appellant maintained that he was standing on the ground when lumber fell on him and injured him, but appellee's proof was that appellant must have climbed on a stack of lumber because lumber was stacked from one side of the bin to the other with no space between the stacks.
The lumber shed was constructed so that lumber could be loaded and unloaded from the outside without the necessity of entering the bins. According to appellee's version of the facts it was not necessary to enter the lumber shed or climb upon a stack of lumber in order to inspect the lumber, but all one had to do was to look into the bin for visual inspection of a particular piece of lumber, and, if a closer inspection was desired, this could be accomplished by pulling the piece of lumber out of the bin. Employees of appellee loaded and unloaded lumber while standing outside the bins and the same was true on occasions when a customer was permitted to unload his own lumber.
Appellant contends that the verdict of the jury was contrary to and against the overwhelming weight of the evidence and the lower court erred in refusing to grant him a new trial. We do not reach this question because this case must be reversed for erroneous instructions given on behalf of appellee.
Appellant next contends that the trial court erred in granting instructions numbered 5[1] and 5-A[2]. Appellee argues that the instructions were proper because we have adopted the historical distinction between trespassers, licensees and invitees, and the status of appellant was changed from invitee to licensee by his actions.
In Astleford v. Milner Enterprises, Inc., 233 So.2d 524 (Miss. 1970), this Court reaffirmed this distinction as follows:
Proposition I in the language of the appellant is as follows: "The trial court erred in holding that the appellant was a mere licensee and that the only duty owed to appellant by appellees was to refrain from wilfully or wantonly injuring her." Appellant concedes that this Court has adopted the historical distinction between trespassers, licensees, and invitees *672 and that if these concepts are followed in this case it is undoubtedly true that appellant was, at best, a mere licensee. Appellant strongly insists that we should abandon, at least for the instant case and cases like it, these traditional concepts. It is pointed out that at least two states, California and Hawaii, have already done so. We have read and considered the authorities cited by appellant and, although they are persuasive, we are not convinced that we should at this time abandon our well-established distinction between persons on property of another and the duty the possessor of the premises owes to such persons. The standard adopted by the Hawaiian court in Pickard v. City and County of Honolulu, [51 Haw. 134,] 452 P.2d 445 (1969) appears to be very simple. The standard adopted by that court is as follows:
[T]hat an occupier of land has a duty to use reasonable care for the safety of all persons reasonably anticipated to be upon the premises regardless of the legal status of the individual.
(452 P.2d at 446).
After a careful consideration and study of this rule we can envision many problems in its application and we do not think conditions have changed to such an extent that we should adopt this rule at this time. (233 So.2d at 525.)
Since the distinction set forth in Astleford is recognized in Mississippi, appellee contends that the instructions were properly granted because, although one may enter premises in the status of an invitee, he may lose such status and acquire that of a licensee, if not that of a trespasser, if he exceeds the scope or purpose of his invitation by proceeding into or through an area not included in the invitation. 62 Am.Jur.2d Premises Liability § 54 (1972), 65 C.J.S. Negligence § 64(4) (1966).
Appellee relies on Langford v. Mercurio, 254 Miss. 788, 183 So.2d 150 (1966); Selby v. McWilliams Realty Corp., 246 Miss. 568, 151 So.2d 596 (1963); Dry v. Ford, 238 Miss. 98, 117 So.2d 456 (1960); Kelley v. Sportmen's Speedway, Inc., 224 Miss. 632, 80 So.2d 785 (1955), which hold that a licensee, or a trespasser, cannot recover for injuries received on another's premises in the absence of proof of willful or wanton injury.
In Dry, this Court held that plaintiff was a business invitee when he entered defendant's garage for the purpose of having repair work performed on his truck, but when he remained at his own election to perform the repair work with permission of the shop foreman because no mechanics were available at that time, he lost his status of invitee and the rights which accompany that state and became a licensee.
In Langford, plaintiff entered a laundry center where coin-operated washing machines were available to the public, and, upon noticing her husband approaching the building, hurriedly left the premises, not through the public door which she entered, but through a storeroom, which was leased to another party, and thence out the back door where she ran off a truck loading ramp and fell to the ground, severely injuring herself. This Court held that peremptory instructions should have been granted in favor of the owner of the laundry center and the lessee of the storeroom because plaintiff exceeded the limits of her invitation when she attempted to exit over the premises of the lessee of the storeroom and that she was a gratuitous licensee as to the premises over which she fled.
In Selby, a newspaper distributor had permission to deliver papers in a seven story office building and was an invitee in the building so long as he remained in the entrance hall, stairways, hallways and other semi-public areas, but when he opened the elevator doors while the elevator was not operating, to place his newspapers in the elevator and fell down the elevator shaft, the Court observed that even though he was an invitee of the appellee, he went *673 beyond the limits of the invitation by opening the elevator door which was closed or fastened and then became a gratuitous licensee.
In Kelley, a spectator at a stock car race left the area occupied by spectators and entered the pit area which was reserved for the use of mechanics employed to serve the racing cars and was injured. This Court held that the plaintiff ceased to be an invitee and became a mere licensee when he entered the pit area and the defendants owed him no higher duty than not to injure him wilfully or wantonly.
The above cases correctly announce the rule contended for by appellee, but we are of the opinion that the status of plaintiff did not change from a business invitee to that of a licensee or trespasser because there was nothing in the invitation to inspect the lumber that limited him to remaining outside the bin except the belief in the mind of appellee's salesman that appellant would not enter the bin to inspect the lumber. This belief was not communicated to appellant.
The granting of instructions 5 and 5-A constitute reversible error because they told the jury that if they believed appellant exceeded his invitation by going into the bin to inspect the lumber, they were to find for appellee. There was no evidence that appellant exceeded his invitation and the jury may have found for the appellee on the basis of these instructions, which were almost peremptory.
Appellant also complains of Instruction No. 7[3] and argues that appellant did not assume the risk of entering the lumber shed, but does not assign as error appellee's Instruction No. 6[4] which is another assumption of risk instruction.
Appellee argues that, under the facts in this case, it was entitled to an instruction based on the assumption of risk. Since our comparative negligence statute (Section 1454 Mississippi Code 1942 Annotated) was first adopted in 1910, the doctrine of assumption of risk has been recognized in some cases as a bar to an action by plaintiff and is deeply ingrained in the law of this state. However, the doctrine has been limited and restricted so that the application of the doctrines of assumption of risk and of contributory negligence to a particular factual situation poses a perplexing question, and where the two overlap and coincide, the absence of a definitive rule magnifies the problem. To illustrate, three cases will be briefly discussed.
In Herod v. Grant, 262 So.2d 781 (Miss. 1972), plaintiff recovered $15,000 for injuries *674 received by him when he fell from defendant's truck. The case was reversed and rendered on appeal. Plaintiff and defendant engaged in a joint enterprise to rid plaintiff's bean field of predatory wild animals. Each equipped himself with a headlight and rifle and about 10:00 p.m. went into the plaintiff's bean field in defendant's pickup truck. They observed deer and the plaintiff seated himself upon a tool box in the bed of the truck immediately to the rear of the cab and defendant drove the truck along the rows of the field which had been combined that afternoon by the plaintiff. Plaintiff fired upon deer twice and when his weapon jammed he obtained the rifle of defendant, and the deer, which had been running parallel to the truck, veered toward the vehicle causing the defendant, according to the plaintiff, to suddenly increase the speed of the truck in an attempt to run over the deer. Plaintiff contended that this action, as well as a slight turn of the vehicle, caused him to fall from the tool box to the ground seriously injuring him. The Court stated:
The sole issue before the Court is whether the appellee, by engaging in this activity, assumed the attendant risk attached to the endeavor.
In Elias v. New Laurel Radio Station, Inc., 245 Miss. 170, 146 So.2d 558 (1962), and Dendy v. City of Pascagoula, 193 So.2d 559 (Miss. 1967), we quoted with approval the rule relative to the necessary elements of assumption of risk as set forth in 19 Mississippi Law Journal, Negligence  Automobile Accidents  Assumption of Risk as a Defense  Contributory Negligence Distinguished, at 370 (1948), wherein it is stated:
... The elements which must be found in order to constitute a defense of assumption of risk are generally stated in some such terms as the following: (1) Knowledge on the part of the injured party of a condition inconsistent with his safety; (2) appreciation by the injured party of the danger in the condition; and (3) a deliberate and voluntary choice on the part of the injured party to expose his person to that danger in such a manner to register assent on the continuance of the dangerous condition.
......
The critical question for this Court to answer is whether the plaintiff comprehended a knowledge of the risk involved in riding in the rear of the truck. We have stated that the assumption of risk is governed by the subjective standard of the plaintiff himself whereas contributory negligence is measured by the objective standard of a reasonable man, and that the assumption of risk is a jury question in all but the clearest cases. Daves v. Reed, 222 So.2d 411 (Miss. 1969).
In considering subjective knowledge, I Blashfield Automobile Law and Practice, section 64.3 (3d Ed. 1965), stated that:
Subjective knowledge is more difficult to prove. Plaintiff may always claim he did not know of the facts creating the risk, or that he did not comprehend the risk involved. Evidence contradicting this is difficult to secure. The jury, having no external standard by which to judge his knowledge, must determine whether he is telling the truth. However, the courts have indicated a willingness to override such contentions of plaintiff where they find that any person of ordinary intelligence must, as a matter of law, have known and appreciated the risk... .
In discussing knowledge and appreciation of the risk, the textwriter in 57 Am.Jur.2d, Negligence, section 282 (1971) indicates that:
Where the facts are such that the plaintiff must have had knowledge of the hazard, the situation is equivalent to actual knowledge and there may be *675 assumption of the risk. In some cases the circumstances may show as a matter of law that the risk was understood and appreciated, and often they may present in that particular a question of fact for the jury. Also, the plaintiff may not close his eyes to obvious dangers, and cannot recover where he was in possession of facts from which he would be legally charged with appreciation of the danger.

In cases involving the issue of assumption of risk, an understanding of the danger involved and consent to assume the risk may be shown by circumstances. However, in the absence of evidence that the injured person knew of the danger, or that the danger was so obvious that he must be taken to have known of it, it cannot be held that he assumed the risk of injury therefrom... .
We are of the opinion that Joseph Grant, by hunting deer from a seated position upon a tool box in the bed of the truck in the late evening hours in a cultivated field, assumed the risk that the vehicle might either pass over rough ground or that it might be accelerated or swerved in the excitement of the chase, or a combination thereof, none lending itself to safety, but rather all pointing directly to a precarious position from which injury could very easily flow. There being no relationship of master and servant, the appellee, a mature and reasonable man, assumed the risk of the endeavor for which no liability extends to the defendant. (262 So.2d at 782-783.) (Emphasis supplied.)
The doctrine of assumption of risk was properly applied to the unusual facts of this case and it represents one of the rare instances where it is applicable.
In Elias v. Bowl-A-Way Lanes, 245 Miss. 170, 146 So.2d 558 (1962), plaintiff was a professional bowler who had operated a bowling establishment in another state for over 11 years. Plaintiff was bowling in defendant's place of business when he left the bowling area while wearing his bowling shoes and went to a snack bar, operated by the defendant in the same building. He returned to his game and because of some liquid or other substance on his shoe which kept him from sliding his foot, he fell and was injured. The testimony showed that there was liquid substance and other debris on the floor at the cash stand of the snack bar which appeared to be the same type substance as that found on his shoes after he fell.
The trial court granted a peremptory instruction and this Court, after discussing and reviewing cases dealing with assumption of risk and contributory negligence, held that it was error for the trial court to grant the peremptory instruction. The case was reversed and remanded with this statement:
However, we also feel that it is a case that should have gone to the jury under proper instructions as to the assumption of risks and contributory negligence involved in the case. The case is therefore reversed and remanded. (245 Miss. at 185, 146 So.2d at 564.) (Emphasis supplied.)
Remanding the case with direction that both the issues of assumption of risk and contributory negligence should be submitted to the jury under proper instructions did not clarify the perplexing problem of whether assumption of risk or contributory negligence should be applied to a given set of facts.
In Wallace v. J.C. Penney Co., Inc., 236 Miss. 367, 109 So.2d 876 (1959), defendant was granted an instruction[5] on assumption *676 of risk. This Court held that the instruction on assumption of risk was error, but not reversible error, because plaintiff had no cause of action and was not entitled to recover in any event.
In Wallace, appellant slipped and fell on a terrazzo tile floor at the entrance of appellee's store which was wet, muddy and slippery. The streets and pavement were wet and the crowds had tracked on the floor of appellee water and dirt causing it to be slippery. In discussing the propriety of the instruction on assumption of risk, this Court stated:
This instruction was error because it erroneously applied the assumption of risk doctrine, which is pertinent when a party voluntarily and knowingly places himself in a position or submits himself to a condition, appreciating that injury to himself is likely to occur at any time so long as such position or condition continues. Saxton v. Rose, 1947, 201 Miss. 814, 29 So.2d 646; Prosser, Torts (2d ed. 1955) Sec. 55, pages 303-313. The instruction stated that, if the jury believed plaintiff knew and appreciated the danger, "or should have seen, known and appreciated the danger by the exercise of her own reasonable care", and she slipped and fell and was injured, then the jury should find for defendant. This eliminates any distinction between assumption of risk and contributory negligence. Under our comparative negligence statutes, Miss.Code 1942, Secs. 1454, 1455, the instruction was also error because it denied the jury its right to weigh the respective negligence, if any, of the parties. Prescott v. Ralph's Grocery Co., 1954, 42 Cal.2d 158, 265 P.2d 904, is directly in point. (109 So.2d at 877.) (Emphasis supplied.)
The assumption of risk instructions in the instant case are subject to the same error pointed out in Wallace; viz., the instructions deny the jury the right to weigh the respective negligence, if any, of the parties.
These three cases show the application of the doctrines of assumption of risk and contributory negligence on a case by case basis under different factual situations. In Herod, assumption of risk was applied, in Elias, both assumption of risk and contributory negligence were applied and in Wallace the Court held that assumption of risk did not apply.
The doctrine of assumption of risk has been under attack in many jurisdictions and has been brought into sharp focus in those jurisdictions which, like Mississippi, have comparative negligence statutes apportioning damages between plaintiff and defendant. In the Law of Torts by William L. Prosser, Fourth Edition, Chapter 11, pages 456, 457, the following summary appears:
The attack on the separate recognition of assumption of risk is largely an attack upon the validity of such distinctions; and as such it has a good deal of merit. The matter is brought to a head by statutes apportioning the damages between plaintiff and defendant, which have been held to affect one defense and not the other. The first answer given, under the Federal Employers' Liability Act, was that while contributory negligence went only to reduce the plaintiff's damages, assumption of risk remained as a complete defense, which barred the action entirely. The same conclusion has been reached under some of the state apportionment statutes. In all probability this defeats the basic intention of the statute, since it continues an absolute bar in the case of one important, and very common, type of negligent conduct on the part of the plaintiff. It can scarcely be supposed in reason that the legislature has intended to allow a partial recovery to the plaintiff who has been so negligent as not to discover his peril at all, *677 and deny it to one who has at least exercised proper care in that respect, but has made a mistake of judgment in proceeding to encounter the danger after it is known. In 1939 the Federal Employers' Liability Act was amended to eliminate the defense of assumption of risk, and the Nebraska statute has been interpreted to mean that the damages are to be apportioned where there is negligent assumption of risk, as in other cases of negligence of the plaintiff. Wisconsin, which has been one of the leading advocates of the contrary position, has now changed its rule to the same effect.

All this goes to say, however, not that there is no such defense as assumption of risk, but that in many cases, at least, where it overlaps and coincides with contributory negligence, the rules of that defense should be applied to it. The term does serve to focus attention upon the element of voluntary acceptance of the defendant's negligence, which is sometimes, but not always, involved in contributory negligence. For that reason, the predication may be ventured that it is not likely to disappear from the court decisions, at least for some time to come, and that courts which have abolished it may be forced to recognize it, if only under another name. But it is by no means a favored defense, and it is likely to be at least limited and restricted in the future. (Emphasis supplied.)
In the above summary, Prosser cites Saxton v. Rose, 201 Miss. 814, 29 So.2d 646 (1947), as an example of cases which recognize assumption of risk as a complete defense under state apportionment statutes.
In this case appellee, as owner of the premises, owed a duty to appellant, its invitee, to have its premises in a reasonably safe condition for use in a manner consistent with the invitation, or at least not to lead appellant into a dangerous trap or expose him to an unreasonable risk, but to give him adequate and timely notice and warning of any latent or concealed peril known to appellee but not known to appellant. Strand Enterprises v. Turner, 223 Miss. 588, 78 So.2d 769 (1955).
Appellant had been engaged in the ceramic tile and plastering business for many years and in the construction business for 27 years. He was thoroughly familiar with the characteristics and use of lumber and used lumber in his own work and frequently observed its use in and around construction jobs. Appellant was experienced and knowledgeable in the construction field and in the use of building materials. Appellee argues that he must have known that it was unsafe to enter the lumber bin adjacent to much higher stacks of lumber which could be tipped over easily by anyone standing next to them who might bump them, and by doing so he assumed the risk incident thereto.
When appellant entered the lumber bin, it matters not whether he was encountering a known risk, or a risk that he should have discovered because of his experience in the construction business, the issue was whether he acted as a reasonably prudent man by entering the lumber bin. In this case the doctrine of assumption of risk overlaps and coincides with contributory negligence. Since assumption of risk is a bar to recovery, but contributory negligence is not under our comparative negligence statute,[6] we see the necessity of adopting a rule to govern cases where the two overlap and coincide.
We do not abolish the doctrine of assumption of risk, but where assumption of risk overlaps and coincides with contributory negligence the rules of the defense of contributory negligence shall apply.
This rule does not prevent a defense on the ground that a plaintiff's injury was caused by his negligence, if his negligence was the sole proximate cause of the injury. *678 This is clearly stated in Law of Torts, Harper and James, Volume 2, § 22.2, p. 1200 as follows:
There are situations, to be sure, where plaintiff's negligence is the sole proximate cause of his injury. But in such a case there is neither need nor room for the doctrine of contributory negligence. Indeed the proposed explanation is precisely the opposite of the case under the present rule. Contributory negligence is never properly invoked when plaintiff's negligence alone causes the damage but only when the negligence of both the plaintiff and defendant are contributing proximate causes of it.
We hold that giving the instruction on assumption of risk was reversible error, but, under the facts as shown in this record, appellee is entitled to have the jury consider the contributory negligence, if any, of appellant under a proper instruction.
Reversed and remanded.
RODGERS, P.J., and PATTERSON, SMITH and BROOM, JJ., concur.
NOTES
[1] DEFENDANT'S INSTRUCTION 5

The Court instructs the jury for the defendant, Economy Supply Company, that under the law a customer entering a storekeeper's place of business is an invitee, but if the customer exceeds his express or implied invitation and permission, leaves the area or part of the premises where he was invited or permitted to be, and enters a building on the premises where he was not expressly or impliedly invited or permitted to go, and thereby exceeds his invitation, then, in such event, the customer is no longer an invitee but becomes, at best, a mere licensee. The only duty owed by a storekeeper to a licensee is not willfully or wantonly injure him. In this case, if you believe from a preponderance of the evidence that the plaintiff, Allen Braswell, exceeded his invitation and permission, express or implied, when he entered the lumber shed, or when he went upon the stack of lumber, if you so believe, then it shall be your sworn duty to return a verdict for the defendant, Economy Supply Company.
[2] DEFENDANT'S INSTRUCTION NO. 5-A

The Court instructs the jury for the defendant that if you believe, from a preponderance of the evidence, that Allen Braswell was not expressly or impliedly invited or permitted by the defendant to go inside the lumber shed and that he exceeded his invitation and permission when he entered and went inside the lumber shed, then it will be your sworn duty to return a verdict for the defendant, Economy Supply Company.
[3] The Court instructs the jury for the defendant, Economy Supply Company, that if you believe from a preponderance of the evidence that the plaintiff, Allen Braswell, knew and understood that it would not be safe, or would be dangerous, to enter the lumber shed and place himself on or near the stack of lumber or to examine the lumber under the conditions then existing, and that said Allen Braswell deliberately and voluntarily entered the lumber shed and placed himself in, on or around the stack of lumber and proceeded to examine the lumber under such conditions, then under the law Allen Braswell himself assumed the risk involved and is entitled to recover nothing by this suit and, if you so find, it will be your sworn duty to return a verdict for the defendant, Economy Supply Company.
[4] The Court instructs the jury for the defendant, Economy Supply Company, that if you believe from a preponderance of the evidence that it would not have been safe, or would have been dangerous, for someone to have gone onto, in, or around the stack of lumber in the lumber shed and that Allen Braswell knew and understood that it would not be safe, or would be dangerous to do so, but nevertheless knowingly and voluntarily entered the lumber shed, or went onto, in, or around the stack of lumber in question and exposed himself to danger or placed himself in a position inconsistent with his own safety then, if you so find, the plaintiff assumed the risk, and the defendant is not liable for his injuries, and if you so find, it will be your sworn duty to return a verdict for the defendant, Economy Supply Company.
[5] ... "The Court instructs the jury for the defendant that the plaintiff in this case assumed the ordinary risks and hazards of entering the entrance to defendant's store over a terrazzo paved walkway entrance or foyer; that is, she assumed such risks and dangers as were open and obvious to a person of ordinary discretion, intelligence and foresight and if you believe that the plaintiff saw, knew and appreciated the danger, or should have seen, known and appreciated the danger by the exercise of her own reasonable care and caution in attempting to walk upon the terrazzo floor when it was wet and slick and in attempting to walk over said floor she slipped and fell and was injured, then you must find for the defendant." (109 So.2d at 877.)
[6] Section 1454 Mississippi Code 1942 Annotated (1956) provides, in part, as follows: "Damages shall be diminished by the jury in proportion to the amount of negligence attributable to the person injured... ."