366 So.2d 661 (1979)
Richard ALLEY
v.
PRASCHAK MACHINE COMPANY and Stanbro Construction Corporation.
No. 50807.
Supreme Court of Mississippi.
January 24, 1979.
*663 Boyce Holleman, Ben F. Galloway, III, Gulfport, for appellant.
White & Morse, Stanford E. Morse, Jr., Bryant & Stennis, L. Kenneth Krogstad, Sue Esther Dulin, Gulfport, for appellee.
Before SMITH, LEE and COFER, JJ.
LEE, Justice, for the Court:
Richard Alley instituted suit in the Circuit Court of Harrison County, Honorable Floyd J. Logan, presiding, against Praschak Machine Company and Stanbro Construction Corporation, for personal injuries sustained. The jury returned a verdict in favor of Praschak and Stanbro, and Alley appeals to this court assigning eleven (11) errors in the trial below. We affirm.

I.-II.
The verdict of the jury as to defendant Praschak Machine Company and defendant Stanbro Construction Corporation was against the overwhelming weight of the evidence and could only be the result of bias, passion and prejudice.
This is a products liability case (negligent failure to turn off electric power also was alleged against Stanbro). On June 8, 1973, appellant, while employed by Chattanooga Glass Company, Gulfport, Mississippi, and while working on a machine built by Praschak, suffered the amputation of his left arm. The machine (a skip hoist) was being installed in the Chattanooga plant by Stanbro. It consisted of a large bucket or skip loader filled with raw materials such as sand, soda, ash, etc., from which glass was manufactured. The bucket was pulled a distance of twelve (12) to fifteen (15) feet up the legs of the machine with steel cables powered by a shaft connected to a chain and sprocket drive mechanism. The materials were dumped into a hopper and were conveyed to the manufacturing process. The main switch for the machine was at floor level, but the chain and sprocket were in close proximity to a rotary limit switch approximately fifteen(15) feet above the floor, which controlled the bucket's extent of travel up and down the rail as the cable wound and unwound around a drum. Appellant had climbed up to adjust the switch, and, during the adjustment process, stuck his left arm across the chain for the purpose of holding to a part of the machine, the adjustment activated the chain and sprocket which caught his arm sleeve, pulled his arm into the machine and amputated it. Appellant fell to the floor of the plant and sustained other injuries.
Appellant contends that the machine was defective because there were no guards over the chain and sprocket, no handholds or rails which appellant could hold to, and no ladder could be placed around the machine so that appellant could climb up to the place of work. He further claims that Stanbro was liable in placing the defective machine into the stream of commerce and in negligently energizing the machine at the time appellant put his arm next to the chain.
Praschak contends that the machine was not defective or dangerous when properly used; that it had no knowledge of where, or under what conditions, the machine would be installed; that the machine was elevated twelve (12) to fifteen (15) feet which insulated it from general workmen; that safety guards would be of no benefit since a maintenance worker was required to remove the guards in order to work on the chain, sprocket and switch; and that there were handles or parts of the machine which the appellant could hold to while making the adjustment, rather than place his arm next to the chain in a dangerous situation.
*664 Stanbro contends that its sole responsibility was to assemble the machine, which it purchased from Praschak at the request of Chattanooga Glass Company; that it was not in the business of purchasing and selling such machines but only in assembling them; that it did not wire, energize or maintain the machine; and that such was the responsibility of Chattanooga Glass Company.
The proof introduced by appellant sustained his theory of the case, and the proof of Praschak and Stanbro sustained their respective theories of the case (expert witnesses testified for the parties). The verdict of the jury was supported by the evidence and was not contrary to the overwhelming weight of the evidence.

III.
The granting of Instruction D-6-14 was improper on the question of assumption of risk and amounted to a peremptory instruction.
Appellant contends that the above instruction did not follow the evidence and that it amounted to a peremptory instruction against him. Three (3) essentials must appear in the doctrine of assumption of risk. They are stated in Elias v. New Laurel Radio Station, Inc., 245 Miss. 170, 146 So.2d 558 (1962), as follows:
"The elements which must be found in order to constitute a defense of assumption of risk are generally stated in some such terms as the following: (1) Knowledge on the part of the injured party of a condition inconsistent with his safety; (2) appreciation by the injured party of the danger of the condition; and (3) a deliberate and voluntary choice on the part of the injured party to expose his person to that danger in such a manner as to register assent on the continuance of the dangerous condition." 245 Miss. at 179, 146 So.2d at 561-562.
Also see Yarbro v. Phipps, 285 So.2d 788 (Miss. 1973).
In Braswell v. Economy Supply Company, 281 So.2d 669 (Miss. 1973), the Court discussed knowledge and appreciation of assumption of risk, and, citing 57 Am.Jur.2d Negligence § 282 (1971), said:
"Where the facts are such that the plaintiff must have had knowledge of the hazard, the situation is equivalent to actual knowledge and there may be assumption of the risk. In some cases the circumstances may show as a matter of law that the risk was understood and appreciated, and often they may present in that particular a question of fact for the jury. Also, the plaintiff may not close his eyes to obvious dangers, and cannot recover where he was in possession of fact from which he would be legally charged with appreciation of the danger." 281 So.2d at 674-675.
Appellant, on cross-examination, testified:
"Q. All right, sir. Now, Mr. Alley, at the time that you were doing these contortions up there, you knew your arm was exposed to that chain and sprocket, didn't you?
A. If the power was on, yes sir  it was exposed to it, yes, sir.
Q. You knew that that constituted an open and obvious hazard to your arm if it suddenly started, didn't you?
A. Yes, sir.
* * * * * *
Q. So when you were there hanging on to that beam and adjusting these two screws, you knew that if the power was on and you adjusted the one that tripped the upper rotary limit switch that would start the bucket down, didn't you?
A. Yes sir, I did.
Q. And the only reason you say now that you did was that you thought the power was off.
A. Yes, sir.
Q. But you didn't have any acknowledgement from anyone that it was off, did you?
A. I can't say, sir."
*665 Sampson Caldwell, a fellow employee of appellant (employees of Chattanooga) testified that he was operating the main switch; that he moved the bucket at the request of appellant; that he asked Alley "Do you want me to cut the power off?"; and that appellant replied, "No, just leave it alone and get out of the way." Bob Clark was welding under the machine, heard appellant tell Caldwell to turn the power on and in seconds Alley was injured. Ken Sproles, another electrician for Chattanooga, and appellant adjusted the switch the night before the accident. Appellant was an experienced electrician and was acquainted with and appreciated the danger involved. He was unable to see Caldwell (or anyone else) at the main switch, who was energizing the machine. Appellant testified he couldn't say that he received any acknowledgment that the power was cut off. Herod v. Grant, 262 So.2d 781 (Miss. 1972) held that the defendant was entitled to a directed verdict where the plaintiff was hunting deer from a seated position upon a tool box in the bed of a pickup truck, being driven at night over a cultivated field. The plaintiff, in the excitement of the hunt, fell from his position on the tool box and was injured. He assumed the risk that the truck might either pass over rough ground or that it might swerve and throw him from his difficult position.
In United Roofing and Siding Company v. Seefeld, 222 So.2d 406 (Miss. 1969), the plaintiff, a plumber, sued for injuries sustained when he stepped on a nail in a pile of debris. Although he could not see the nail, the Court said that the plaintiff assumed the risk of such injury when he had seen carpenters working in that area since he had cleaned the same.
The Instruction D-6-14 submits to the jury all the elements set forth in Elias, supra. Paragraph 4 of the instruction does use the language "when he did not know whether electrical power to the machine was on." The proof for appellees was strong that appellant knew the power was on and the machine was energized. There could be no complaint about that part of the instruction, if the language "when he knew the electrical power to the machine was on" had been used. However, the testimony of appellant (even though he said he did not know the power was on) along with the physical facts indicate that appellant was reasonably aware that the current had not been turned off. Under all the facts, adjustment of the machine, powered by the highly dangerous agency of electricity, involved risk and danger and was tantamount to appellant having actual knowledge of that risk. Therefore, we are of the opinion that the instruction was in accordance with the evidence and law and does not constitute reversible error.[1]

IV.
The trial court erred in granting Instruction D-14 concerning the reasonableness of the design of the Praschak skip loader machine in a strict liability case.
Appellant charged in his second amended declaration that Praschak failed to properly design the machine in such manner as to allow it to be assembled in a safe position. He proceeded on the theory of strict liability and negligent design, and presented evidence in support of those theories. Therefore, Praschak was entitled to an instruction informing the jury on the question of design. The jury should be instructed on all material issues presented by the pleadings and the evidence. 88 C.J.S. Trial § 302, at 819 (1955). A party has the right to have his theory of the case presented to the jury by instructions, if there is evidence to support it. Murphy v. Burney, 27 So.2d 773 (Miss. 1946); Crow v. Burgin, 38 So. 625 (Miss. 1905). The trial court did not err in granting the instruction.

*666 V.
The trial court erred in granting Stanbro Construction Corporation a partial directed verdict on the question of its liability for selling, distributing and assembling an inherently dangerous product and the court further erred in granting Instruction D-2-28 and in refusing Instructions P-3, P-7, and P-5.
In State Stove Manufacturing Company v. Hodges, 189 So.2d 113 (Miss. 1966), this Court adopted the strict liability standard for manufacture of a product as set forth in Restatement (2d) Torts, § 402(A). Subsection (1)(a) provides that the seller of a defective product unreasonably dangerous to the consumer is liable for injuries resulting therefrom when the seller is engaged in the business of selling such product.
The evidence in the present case indicates that Stanbro was not in the business of selling the machine manufactured by Praschak but that the sale of same was an isolated sale and was made solely to aid Chattanooga for bookkeeping purposes. In Pridgett v. Jackson Iron & Metal Company, 253 So.2d 837 (Miss. 1971), it was held that defendant, a scrap iron dealer who sold some fifty-five (55) gallon drums, one of which exploded when cut in half and injured plaintiff, was not liable under Section 402(A), Restatement (2d) of Torts or under State Stove, supra. Therefore, the granting and refusal of the instructions complained of was not error.
We have carefully examined the remaining assignments of error and are of the opinion that they do not constitute reversible error.
For the reasons stated, the judgment of the lower court is affirmed.
AFFIRMED.
PATTERSON, C.J., SMITH, ROBERTSON, P. JJ., and SUGG, WALKER, BROOM, BOWLING and COFER, JJ., concur.
NOTES
[1] The writer feels that the assumption of risk issue seldom should be submitted to a jury under Mississippi's Comparative Negligence Law. Where the assumption of risk doctrine would apply, the negligence of the injured person, for practical purposes, would have to be the sole proximate cause of the accident, and such issue should be submitted to the jury rather than assumption of risk.