477 So.2d 261 (1985)
Clytee NICHOLS, Mary Joe Heard and Larry Nichols
v.
WESTERN AUTO SUPPLY COMPANY, INC., M & W Butane Gas Company, Inc., and Eagle Range & Manufacturing Company, Inc.
No. 55014.
Supreme Court of Mississippi.
September 18, 1985.
Rehearing Denied November 6, 1985.
John L. Long, Kenneth Mayfield, Tupelo, for appellant.
Thomas A. Wicker, Holland, Ray & Upchurch, Tupelo, for appellee.
Before ROY NOBLE LEE, ROBERTSON and SULLIVAN, JJ.
ROY NOBLE LEE, Presiding Justice, for the Court:
Clytee Nichols, Mary Joe Nichols Heard, and Larry Nichols filed suit in the Circuit Court of Monroe County, Honorable Neal B. Biggers, presiding, against Western Auto Supply Company, Inc. [Western Auto], Eagle Range and Manufacturing Company, Inc. [Eagle Range], and M & W Butane Gas Company of Amory, for damages resulting from the wrongful death of their husband and father, Clarence Nichols. The complaint was based on strict liability in tort as to Western Auto and Eagle Range and negligent installation of a gas stove on the part of M & W Butane Gas Company. At the conclusion of all the evidence, the lower court entered a directed verdict in favor of M & W Butane Gas Company and the case was submitted to the jury on the issue of strict liability in tort. The jury returned a verdict in favor *262 of the defendants and the Nichols have appealed here, assigning the following errors in the trial below:
(1) The lower court erred in instructing the jury on assumption of risk without instructing it on contributory negligence pursuant to the Braswell rule.
(2) The lower court erred in not instructing the jury on comparative negligence, while instructing them on assumption of the risk.
In April, 1979, Larry Nichols, son of the deceased, bought a new gas stove from Western Auto in Fulton, Mississippi. The stove was manufactured by Eagle Range and Manufacturing Company of Belleville, Illinois, and was installed in the Nichols home by M & W Butane Gas Company.
Several weeks after installation of the stove, members of the Nichols family began to notice shocks and tingling sensations resulting when they came in contact with a water faucet located in the carport of the Larry Nichols home. The wife experienced shocks while working in a flower bed along the outside edge of the house. They became more frequent and worse as time elapsed.
On July 26, 1979, Larry Nichols attempted to use the carport faucet and, as he was turning it off, he was "badly shocked." It was so highly energized that he had to use a rubber hose for insulation before turning the faucet. Larry Nichols instructed his wife to inform Clarence Nichols of the dangerous situation and requested that he do something about it. Subsequently, on the same day, two telephone company employees were attempting to install an extra phone line underneath the house when one of them received a shock so strong that they reported to Clarence Nichols, who was present, that they would not complete the job until he had turned off the main power switch, which was done.
About 5:30 that evening, after Mrs. Larry Nichols had informed him that the water pipes were "hot", Clarence Nichols decided to crawl underneath the house and look at the pipes and wiring. Clarence Nichols was a builder who had extensive experience in construction and wiring, and had built and wired the Larry Nichols house. While under the house, he told Larry Nichols he was unable to see what was causing the shocks and told him not to come under the house because the pipes were "hot." When he attempted to crawl out from under the house, Clarence Nichols' back came in contact with one of the pipes and he was electrocuted. Larry Nichols finally was able to separate him from the pipe and pull him out from under the house, but, after being rushed to the hospital, Clarence Nichols was pronounced dead. After the accident, a pinched (frayed) wire was found on the stove and was repaired.
Expert testimony shows without contradiction that the house was improperly wired in that the wiring contained no grounding. M & W Butane Gas Company installed the gas stove and connected the stove to the gas supply pipes. However, it did not do the electrical work in the stove installation and that work was performed by Clarence Nichols. He used a two-prong rather than a three-prong extension cord to plug in the stove. Eagle Range was required by government and industry regulations to use a three-prong plug on the stove for safety reasons, which was done. The expert testimony was uncontradicted that using a two-prong extension cord was improper because it also eliminated adequate grounding and that, if the wiring in the house had been proper and if a proper three-prong extension cord had been used by Clarence Nichols, the accident would not have happened.

I.  II.
Appellants contend (1) that the lower court erred in not instructing the jury on contributory/comparative negligence. There is no merit in this contention for the reason that appellants failed to request a contributory/comparative negligence instruction and the lower court may not be put in error for not granting such an instruction of its own volition. Medley v. Carter, 234 So.2d 334 (Miss. 1970); Pulliam v. Ott, 246 Miss. 739, 150 So.2d 143 *263 (1963); Lindsey Wagon & Co. v. Nix, 108 Miss. 814, 67 So. 459 (1915). See also Newell v. State, 308 So.2d 71 (Miss. 1975), a criminal case, where the Court held that a trial judge shall not be put in error for his failure to instruct on any point of law unless specifically requested in writing to do so.
The appellees did request a contributory/comparative instruction. Assuming arguendo, but not deciding, that the instruction was in proper form, the appellants can derive no help or benefit from the lower court's refusal of the instruction. They cannot complain on appeal that the lower court erred in refusing an instruction requested by the appellees. Munford, Inc. v. Peterson, 368 So.2d 213 (Miss. 1979).
Appellants contend (2) that the lower court erred in instructing the jury on assumption of risk by the deceased, and, again, that contributory negligence should have been submitted to the jury along with the assumption of risk instruction.
Appellants cite and rely upon Braswell v. Economy Supply Co., 281 So.2d 669 (Miss. 1973), for authority that the lower court erred in granting the assumption of risk instruction without granting a contributory/comparative negligence instruction. We have covered the second prong of this position, viz, that the lower court did not commit error in submitting a contributory negligence instruction of its own volition, when appellants did not request such an instruction. Braswell is distinguished on the facts from the present case. Braswell was injured when he went upon the premises of Economy Supply Company for the purpose of inspecting lumber in a lumber shed owned by Economy. The status of Braswell as a trespasser, licensee, and invitee was involved in the case, and that status and assumption of risk were submitted to the jury. In Braswell, the Court held that, where assumption of risk overlaps and coincides with contributory negligence, the defense of contributory negligence would apply. In the case sub judice, the record, as referred to in appellee's brief, without contradiction shows the following:
(1) Clarence Nichols, the decedent, was aware that Larry Nichols and other members of his family had been slightly shocked by the water pipes on a number of occasions prior to July 26, 1979.
(2) The decedent was present on July 26, 1979, when the South Central Bell employee was badly shocked.
(3) The decedent was informed by the employees for South Central Bell that something should be done about the energized water pipes and his reply was that he had built the house and knew more about it and he would take care of it himself.
(4) The South Central Bell employees refused to do any further work under the house until Clarence Nichols turned the power off so as to eliminate the danger of shock from the water pipes.
(5) Clarence Nichols was informed by his son that he had been badly shocked later that same day in attempting to turn on the water faucet in the carport.
(6) The decedent had been shocked by the pipes himself prior to the accident.
(7) Knowing all of this, the decedent crawled up under the house with a drop light to look at the water pipes. He was not under the house to do anything, not with any tools, but solely for the purpose of making a "visual inspection."
(8) The decedent was aware enough of the danger to instruct his son not to come under the house because the pipes were "hot."
(9) Despite this warning to his son, Clarence Nichols continued to crawl under the house, then turned back without having done anything, and in crawling out came in contact with an energized pipe, was shocked and subsequently died.
In Alley v. Praschak Machine Co., 366 So.2d 661 (Miss. 1979), which involved products liability, Alley suffered the amputation of his left arm while working on a skip hoist machine built by Praschak Machine Company, when he attempted to adjust a switch which powered a chain and sprocket, and, during the adjustment process, stuck *264 his left arm across the chain for the purpose of holding to a part of the machine. The sprocket caught his arm sleeve, pulled his arm into the machine and amputated it. An assumption of risk instruction was granted to the appellee and we said the following:
The Instruction D-6-14 submits to the jury all the elements set forth in Elias, supra. Paragraph 4 of the instruction does use the language "when he did not know whether electrical power to the machine was on." The proof for appellees was strong that appellant knew the power was on and the machine was energized. There could be no complaint about that part of the instruction, if the language "when he knew the electrical power to the machine was on" had been used. However, the testimony of appellant (even though he said he did not know the power was on) along with the physical facts indicate that appellant was reasonably aware that the current had not been turned off. Under all the facts, adjustment of the machine, powered by the highly dangerous agency of electricity, involved risk and danger and was tantamount to appellant having actual knowledge of that risk. Therefore, we are of the opinion that the instruction was in accordance with the evidence and law and does not constitute reversible error.
366 So.2d at 655.
Alley, supra, refers to Elias v. Laurel Radio Station, Inc., 245 Miss. 170, 146 So.2d 558 (1962), where the elements of assumption of risk were stated:
The elements which must be found in order to constitute a defense of assumption of risk are generally stated in some such terms as the following: (1) Knowledge on the part of the injured party of a condition inconsistent with his safety; (2) appreciation by the injured party of the danger of the condition; and (3) a deliberate and voluntary choice on the part of the injured party to expose his person to that danger in such a manner as to register assent on the continuance of the dangerous condition.
245 Miss. at 179, 146 So. at 561-62.
Instruction D-E-4 on assumption of risk which appellants assign as error, follows:
The Court instructs the jury that if you find from a preponderance of the evidence in this case that the deceased
1. knew that the existence of electricity in the water pipes in the Larry Nichols' home was inconsistent with his safety; and
2. appreciated the danger; and
3. knowingly, deliberately and voluntarily chose to expose himself to the danger, so as to assent to the dangerous situation,
then the deceased assumed the risk of injury and death and the Plaintiffs can not recover from the Defendants and your verdict shall be for the Defendants, Eagle Range and Western Auto.
The instruction was taken practically verbatim from the elements set forth in Elias, supra, and followed by this Court in Alley. The lower court submitted to the jury each of the three elements: (1) knowledge, (2) appreciation by the injured party, and (3) deliberate and voluntary choice to expose his person to the danger.
Regardless of the feeling of attorneys and judges on assumption of risk, the doctrine has not been abolished in Mississippi, and Instruction D-E-4 properly submitted the question to the jury. We find no error in the instruction.
Since the assumption of risk doctrine is still viable in Mississippi, we are of the opinion that it may be applied in a proper case based on strict liability in tort. The majority of the jurisdictions in this country permits assumption of risk as a defense in such cases, even though it may be worded differently as consisting of voluntarily and unreasonably proceeding to encounter a known danger, and is usually referred to as contributory fault. 63A Am.Jur.2d Products Liability § 954, et seq. (1984); 46 A.L.R.3d 240, 253. The United States Court of Appeals for the Fifth Circuit *265 in Edwards v. Sears Roebuck & Co., 512 F.2d 276 (5th Cir.1975), applying Mississippi law, held that the comparative negligence doctrine applies in strict liability cases and that contributory negligence was a defense in a strict liability action.
We are of the opinion that the lower court did not commit reversible error on the issues raised by the assignments of error and, therefore, the judgment of the lower court is affirmed.
AFFIRMED.
PATTERSON, C.J., WALKER, P.J., and HAWKINS, DAN M. LEE, PRATHER, ROBERTSON, SULLIVAN and ANDERSON, JJ., concur.