991 So.2d 652 (2008)
Jamie L. KIRKLEY, Appellant
v.
FORREST COUNTY GENERAL HOSPITAL, a Political Subdivision of the State of Mississippi, Appellee.
No. 2007-CA-00746-COA.
Court of Appeals of Mississippi.
September 23, 2008.
*654 David L. Sullivan, Gulfport, Daniel Kyle Robertson, attorneys for appellant.
R. Christopher Wood, James K. Dukes, Hattiesburg, attorneys for appellee.
Before MYERS, P.J., IRVING and CARLTON, JJ.
CARLTON, J., for the Court.
¶ 1. Jamie L. Kirkley filed suit in the Circuit Court of Forrest County against her employer's landlord, Forrest County General Hospital (Forrest General), seeking damages for personal injuries that she sustained at her place of employment when she fell from a table while attempting to unplug a hot water heater from an electrical outlet situated approximately six feet from the floor. Kirkley alleged that Forrest General was negligent in its maintenance and repair of the room in which she was injured.
¶ 2. After a bench trial on the matter, the trial court entered a judgment in favor of Forrest General. Kirkley's post-trial motions were denied. Aggrieved, Kirkley appeals and raises the following issues:
I. Whether the trial court's findings of fact are against the overwhelming weight of the evidence.
II. Whether the trial court erred when it applied the assumption of risk doctrine.
III. Whether the trial court erred in failing to apply Mississippi's landlord/tenant law.
IV. Whether the trial court erred in applying principles of premises liability.
For the reasons explained below, we find no error and affirm.

FACTS
¶ 3. In August or September 1997, Kirkley began working as a dental assistant for Dr. Brad Holifield, D.D.S., in Hattiesburg, *655 Mississippi. In 1991, prior to Kirkley's employment with Dr. Holifield, Dr. Holifield leased suite 106 in a medical plaza from Forrest General for use in his dental practice. Under the terms of the lease agreement, Forrest General agreed to provide services and utilities including "hot and cold running water, electricity, sewerage, heat and air conditioning...." The lease agreement also contained a provision regarding maintenance and repair that provided in part:
Lessor shall, at its sole risk, cost and expense, make such repairs and perform such maintenance to the demised premises, and to the building as a whole, as may be necessary during the term of this lease agreement; provided, however, this contemplates repairs arising only from the ordinary and reasonable use of the demised premises....
[I]f the Lessee claims there is a defect in the demised premises or in any of the fixtures or any article of equipment therein or in the building containing the demised premises, whether caused by the Lessor or otherwise, then the Lessee shall give prompt written notice to the Lessor, and a reasonable opportunity shall be given to the Lessor to remedy the condition set forth in said notice. Failure to give such notice shall be construed as a waiver of such condition or defect and of any and all claims that the Lessee has been evicted wholly, partly or constructively from the demised premises; provided, however, the provisions contained in this paragraph are not to be construed as an increase of the Lessor's duties and obligations hereunder.
¶ 4. Adjacent to suite 106 was a "mechanical room," which was not a part of Dr. Holifield's leasehold premises. The mechanical room, which housed a hot water heater, was used by Forrest General's maintenance staff as a storage room. For several years prior to the incident at issue, Dr. Holifield and his employees used the mechanical room to house a dental vacuum pump (or a "suction unit"); this use was made with the knowledge of and without objection from Forrest General. The mechanical room had only two electrical outlets. One outlet was used to service the hot water heater; this outlet was situated approximately one foot above the hot water heaterapproximately six feet above the floor. The other outlet was used to service Dr. Holifield's suction unit; this outlet was situated approximately one foot above the floor.
¶ 5. In 1994 or 1995, Dr. Holifield decided that he needed a stacked washer/dryer to wash and dry towels that were used during surgery. Accordingly, he purchased a stacked washer/dryer unit, which was installed in the mechanical room.[1] Thus, there were two outlets available in the mechanical room to service three appliances: a hot water heater, a suction unit, and a stacked washer/dryer unit. This arrangement was problematic because only two of the three appliances could operate simultaneously.
¶ 6. At first, Dr. Holifield and his assistants plugged the washer/dryer unit into the outlet used to service the suction unit when the suction unit was not in use. However, sometime later, Dr. Holifield's practice expanded, and another dentist, Dr. John Robinson, joined the practice. According to Dr. Holifield, it then became necessary for the suction unit to be in operation "at all times." Consequently, the outlet used to service the hot water heater became the preferred source of electricity to operate the washer/dryer unit. The hot water heater was located *656 approximately ten feet from the washer/dryer unit. As a result of this arrangement, an extension cord was needed to plug the washer/dryer unit into the outlet used to service the hot water heater. Forrest General employees supplied an extension cord to Dr. Holifield. Because this outlet was located approximately six feet above the ground, Dr. Holifield's dental assistants developed a routine practice of standing on a three-foot-tall work table in order to reach the outlet to unplug the hot water heater and plug in the washer/dryer unit.
¶ 7. In August or September 1997, Kirkley began working as a dental assistant for Dr. Holifield. As a dental assistant, her duties included, among other things, washing and drying the patient towels in the stacked washer/dryer unit; she performed this task once or twice a week.
¶ 8. Sometime in 1998, Dr. Holifield contacted Forrest General, explained the situation, and requested that an additional outlet be installed in the mechanical room as a more convenient means of plugging in the washer/dryer unit. The installation of an additional outlet required the installation of an additional breaker panel. Forrest General's maintenance staff began installing the additional breaker panel; however, the project was not completed.[2] Therefore, Kirkley and Dr. Holifield's other assistants continued to climb onto the work table in order to unplug the hot water heater and plug in the washer/dryer unit.
¶ 9. On May 7, 1999, Kirkley climbed onto the work table to unplug the hot water heater and plug in the washer/dryer unit. According to Kirkley, the table was cluttered with "stuff," and she only had enough room to put one foot on the table. As Kirkley stood on the table and reached behind the hot water heater, she felt "a little shock," lost her balance, fell from the table, and landed on her shoulder. She suffered a posterior labral tear in her shoulder that required surgery. As to the "little shock," Kirkley testified that "[i]t wasn't an electrocution or anything like that. It was just like a hard static shock." She further described the shock as follows: "It's almost like if you were getting out of your car and touched your car and it shocked and you kind of jerk."
¶ 10. Kirkley was awarded worker's compensation benefits and later filed a negligence suit against Forrest General to recover further compensation. After a bench trial, the trial court entered judgment in favor of Forrest General, finding that (1) the mechanical room was a common area, (2) Kirkley assumed the risk of an open and obvious danger and was "guilty of simple negligence," and (3) Forrest General did not breach its duty to keep the mechanical room in a reasonably safe condition. In finding that Forrest General did not breach its duty to keep the mechanical room in a reasonably safe condition, the trial judge stated as follows:
Forrest General Hospital had installed the electrical outlet prior to the washer/dryer being moved into the maintenance area, which area was not considered part of the premises leased by Dr. Holifield.... This leaves only the question of whether Forrest General Hospital fulfilled its duty to keep its premises in a reasonably safe condition, which it did. Forrest General Hospital did not breach any duty owed to Ms. Kirkley.
....
Ms. Kirkley was guilty of simple negligence in that she had testified that she had been shocked while performing the function on previous occasions, and she *657 freely and voluntarily subjected herself to this risk of harm. Additionally, Ms. Kirkley testified that on May 7, 1999 when she climbed upon the work table, that there was only room for her to stand on one foot. There was absolutely no reason why she could not have moved whatever object occupied the space on the work table so that she could stand with both feet upon the work table. There is no material fact issue as to whether Forrest General Hospital made the premises reasonably safe. Forrest General did not breach any duty owed to Ms. Kirkley....
¶ 11. Kirkley filed post-trial motions, which the trial court denied. Aggrieved, Kirkley now appeals to this Court.

STANDARD OF REVIEW
¶ 12. "A circuit court judge sitting without a jury is accorded the same deference with regard to his [or her] findings as a chancellor, and his findings will not be reversed on appeal where they are supported by substantial, credible, and reasonable evidence." Cole v. Miss. Dep't of Pub. Safety, 930 So.2d 472, 475(7) (Miss. Ct.App.2006) (quoting Donaldson v. Covington County, 846 So.2d 219, 222(11) (Miss.2003)). On appeal, the trial judge's findings will not be disturbed unless it is determined that the judge "abused [his or her] discretion, was manifestly wrong, clearly erroneous, or an erroneous legal standard was applied." Cole, 930 So.2d at 475(7) (citing Miss. Dep't of Transp. v. Trosclair, 851 So.2d 408, 413(10) (Miss.Ct. App.2003)).

DISCUSSION

I. Whether the trial court's findings of fact are against the overwhelming weight of the evidence.
¶ 13. Under this assignment of error, Kirkley claims that the trial court erred in making the following findings of fact:
(1) the mechanical room was not a part of Dr. Holifield's leasehold premises, but was a common area;
(2) the trial testimony did not verify that Dr. Holifield secured the express written authority of Forrest General to use the mechanical room;
(3) the washer/dryer unit could be plugged into the outlet for the suction unit when the suction unit was not in use;
(4) Dr. Holifield failed to provide Forrest General with written notice that a problem existed concerning the electrical outlets in the mechanical room; and
(5) Forrest General had no knowledge of the fact that, for a substantial length of time, Ms. Kirkley had been placing herself in a venturous situation every time she would connect or disconnect certain appliances.
¶ 14. Kirkley also claims that the trial court erred in making numerous findings of fact regarding her injuries and medical history. As explained below, we hold that the trial judge did not err in finding that Forrest General did not breach the duty it owed to Kirkley, i.e., to keep the mechanical room in a reasonably safe condition. Therefore, we need not reach Kirkley's challenges to the trial court's findings of fact regarding her injuries and/or medical treatment.

1. Whether the trial judge erred in finding that the mechanical room was not a part of Dr. Holifield's leasehold premises, but a common area.
¶ 15. Kirkley argues that the trial judge erred in finding that the mechanical room was a common area. She claims that an implied agreement existed between Forrest General and Dr. Holifield that Dr. Holifield could use the mechanical room; *658 thus, the mechanical room was a part of Dr. Holifield's leasehold premises.
¶ 16. We find that the trial judge did not err in finding that the mechanical room was a common area. Where different parts of a premises are leased to different tenants, other parts of the premises which remain under the landlord's possession or control and are expressly or impliedly reserved for the common use of different tenants are considered "common areas." See, e.g., Fipps v. Glenn Miller Constr. Co., 662 So.2d 594, 596 (Miss.1995); O'Cain v. Harvey Freeman and Sons, Inc., 603 So.2d 824, 835 (Miss.1991) (Pittman, J., dissenting); Cappaert v. Junker, 413 So.2d 378, 379-80 (Miss.1982). From these decisions it is clear that the landlord's retention of control over the area is the critical factor in determining whether the area is a common area.
¶ 17. In the instant case, the mechanical room was not a part of Dr. Holifield's leasehold premises, and there is no evidence suggesting that Forrest General relinquished control over the mechanical room. Forrest General's retention of control over the mechanical room is evidenced by its use of the room for storage. Forrest General permitted Dr. Holifield and his employees to use the mechanical room, and the record also reveals that at least one other tenant was permitted to use the room.[3] In light of these facts, we find that the trial judge's finding that the mechanical room was a common area is supported by substantial evidence.
¶ 18. Additionally, we note that the effect of any implied agreement that Dr. Holifield could use the mechanical room is not fatal to the trial judge's finding. The implied agreement supports the trial judge's finding that the mechanical room was a common area, in that, the implied agreement shows that Forrest General reserved the room for the common use of multiple tenants (namely, Dr. Holifield and his employees and the other tenant), while simultaneously retaining control over the room by not leasing it and using the room for its own purposes. Moreover, Kirkley cites no authority to support the proposition that Dr. Holifield's permissive use of the mechanical room brought the room within his leasehold premises.

2. Whether the trial court erred in finding that the trial testimony did not verify that Dr. Holifield secured the express written authority of Forrest General to use the mechanical room.
¶ 19. Kirkley argues that this finding is not relevant to the instant case; she does not explain the basis of this contention or cite supporting authority. She does not allege that this finding is clearly erroneous or not supported by substantial evidence. After reviewing the record we find, as did the trial judge, no evidence that Dr. Holifield secured the written authority to use the mechanical room. Therefore, we find that the trial judge did not err in so finding.

3. Whether the trial judge erred in finding that the washer/dryer unit could be plugged into the outlet for the suction unit when the suction unit was not in use.
¶ 20. Again, the basis of Kirkley's challenge to this finding is unclear. Further, we fail to see the significance of this finding of fact or how it adversely affected Kirkley's case. In any event, we find substantial evidence in the record that supports this finding.
*659 ¶ 21. Trial testimony established that the outlet for the suction unit was used to provide power to the washer/dryer unit until Dr. Robinson arrived, at which point, the suction unit began operating at all times. In turn, the outlet for the hot water heater became the logical means for servicing the washer/dryer unit, and Dr. Holifield's employees began using this outlet. While the trial judge could have more clearly and completely articulated the particulars surrounding this finding of fact, we conclude that this finding was not manifestly wrong. Additionally, in light of our resolution of the following issues, we fail to see how the lack of details concerning this finding prejudiced Kirkley's case.

4. Whether the trial judge erred in finding that Dr. Holifield failed to provide Forrest General with written notice that a problem existed concerning the electrical outlets in the mechanical room.
¶ 22. While Kirkley argues that the trial judge erred in this finding, she admits in her appellate brief that Dr. Holifield did not provide written notice of the electrical outlet situation. Our review of the record yields no evidence that Dr. Holifield ever provided written notice to Forrest General concerning the need for an additional electrical outlet in the mechanical room. We find that the trial judge did not err in this finding. Again, we fail to see how this finding prejudiced Kirkley's case in light of our resolution of the following issues.

5. Whether the trial judge erred in finding that Forrest General had no knowledge of the fact that, for a substantial length of time, Kirkley had been placing herself in a venturous situation every time she would connect or disconnect certain appliances.
¶ 23. Kirkley argues that the trial judge's finding was error. She points to the trial testimony of Sam Herrin, the director of Forrest General's engineering department, and Oliver Pollard, one of Forrest General's maintenance mechanics.
¶ 24. Pollard testified that he was aware that Dr. Holifield's assistants were climbing on the work table to unplug the hot water heater and plug in the washer/dryer unit, and he witnessed them do this on several occasions. Herrin testified that he was aware of the request for an additional outlet. However, he provided no testimony bearing on his knowledge that Dr. Holifield's employees routinely climbed on the table to plug in the washer/dryer unit. Herrin did work closely with Pollard and was familiar with the mechanical room; thus, it is a reasonable inference that Herrin possessed this knowledge also.
¶ 25. Pollard's testimony clearly established that he, and through him Forrest General, had knowledge that Dr. Holifield's employees routinely climbed on the table to plug in the washer/dryer unit. Accordingly, we find that the trial judge's finding on this point was manifestly wrong. However, we find the error to be harmless. As explained below, we find that the trial judge correctly determined that Forrest General did not breach its duty to keep the mechanical room in a reasonably safe condition. Forrest General's knowledge, or the lack thereof, is inconsequential as to whether the mechanical room presented an unreasonably dangerous condition.

II. Whether the trial court erred when it applied the assumption of risk doctrine.
¶ 26. Kirkley asserts that her employment required washing towels; thus, her employment was an influence or circumstance *660 that induced her continued exposure to the risk of climbing onto the table and reaching behind the hot water heater. In support of this argument, she cites Elias v. New Laurel Radio Station, Inc., 245 Miss. 170, 178-79, 146 So.2d 558, 561 (1962) ("[The assumption of risk doctrine] has no application where a continued exposure to risk is due to a lack of reasonable opportunity to escape after the danger is appreciated, or is the result of influence, circumstances, or surroundings which are a real inducement to continue."). Kirkley also argues that the assumption of the risk doctrine is applicable only when the plaintiff's negligence is determined to be the sole proximate cause of his or her injury. Braswell v. Economy Supply Co., 281 So.2d 669, 677-78 (Miss.1973).
¶ 27. Indeed, the Mississippi Supreme Court has held that "the assumption of risk doctrine is subsumed into comparative negligence." Churchill v. Pearl River Basin Dev. Dist., 757 So.2d 940, 943(12) (Miss.1999). In this regard, Mississippi law holds that the assumption of the risk doctrine "merely goes to the percentage of fault attributable to the plaintiff; it no longer affords a complete defense to the defendant unless the [trier of fact] finds that the plaintiff's assumption of risk proportionately reduces damages to zero." Donald v. Triple S Well Serv., 708 So.2d 1318, 1325(34) (Miss.1998) (citing Horton v. American Tobacco Co., 667 So.2d 1289, 1292 (Miss.1995)).
¶ 28. In the instant case, the trial judge determined that Kirkley assumed the risk of injury and was "guilty of simple negligence." While the trial judge did not expressly find that Kirkley's conduct was the sole proximate cause of her injury, he did conclude that Forrest General did not breach the standard of care and was not negligent. The trial judge's finding that Forrest General was not negligent necessarily implies that Kirkley's negligence was the sole proximate cause of her injuries.
¶ 29. As explained below, we find that the trial court correctly determined that Forrest General was not negligent. Therefore, Forrest General cannot be held to any degree of comparative negligence, and Kirkley's comparative negligence can only be said to reduce her damages to zero. Therefore, there is no basis to conclude that the trial judge erred in applying the assumption of the risk doctrine. This issue is without merit.

III. Whether the trial court erred in failing to apply Mississippi's landlord/tenant law.
¶ 30. Kirkley argues that a lessor may be held liable for injuries that occur in a common area as a result of the landlord's failure to keep the common area in a reasonably safe condition. She also argues a lessor may be held liable where he makes a specific agreement to repair, but fails to do so. Kirkley further claims that a lessor may be held liable where he undertakes to make repairs and does so negligently.
¶ 31. Kirkley identifies valid theories on which a landlord may be held liable in tort for injuries occurring on his or her leased premises. Indeed, a landlord has a duty to use reasonable care to keep common areas in a reasonably safe condition and is liable for injuries caused by his negligence in failing to do so. See, e.g., Cappaert, 413 So.2d at 380; Turnipseed v. McGee, 236 Miss. 159, 167, 109 So.2d 551, 554 (1959). A landlord may also be held liable for injuries cause by the breach of a specific agreement to repair. See, e.g., Loflin v. Thornton, 394 So.2d 905, 906 (Miss.1981) (citing Floyd v. Lusk, 190 So.2d 451, 452 (Miss.1966)). Additionally, a landlord may be liable where he or she undertakes to make a repair, whether or *661 not obligated by agreement to so, and fails to exercise reasonable care in making the repair. See, e.g., Kassis v. Perronne, 209 So.2d 444, 446 (Miss.1968) (quoting Green v. Long, 152 Miss. 117, 119, 118 So. 705, 706 (1928)); Turnipseed, 236 Miss. at 166, 109 So.2d at 554.
¶ 32. As previously determined, the trial judge did not err in finding that the mechanical room was a common area. Thus, the trial judge correctly found that Forrest General had a duty to keep the mechanical room in a reasonably safe condition. We find that this was the appropriate standard of care to be applied in the instant case. While Kirkley cites other theories on which a landlord may be held liable, we find that this case turns on the trial judge's finding that the mechanical room was reasonably safe.
¶ 33. We find that the trial judge did not err in finding that Forrest General did not breach its duty to keep the mechanical room in a reasonably safe condition. Simply put, the risk of harm in unplugging an appliance from an electrical outlet situated six feet above the floor is not an unreasonable one. While the parties certainly recognized that climbing onto a table carried with it the possibility of injury by falling, it does not follow that the risk was unreasonable or that Forrest General was negligent. On this point, a leading authority on the law of torts states as follows regarding unreasonable risk:
Nearly all human acts, of course, carry some recognizable but remote possibility of harm to another.... Those [risks] against which the actor is required to take precautions are those which society, in general, considers sufficiently great to demand preventative measures.... [Injuries caused by various risks that are not unreasonable] have happened, and will occur again; but they may not be so likely to do so on any particular occasion as to make it necessary to burden the freedom of human action with precautions against them. Such events are, in a sense, `unavoidable accidents' for which there is no liability."
Keeton, W. Page, Prosser and Keeton on Torts, § 31, p. 170-71 (5th ed.1984).
¶ 34. In the instant case, the risk of harm from climbing onto the table was not so great as to preclude a finding that the mechanical room was in a reasonably safe condition. A landlord cannot, nor is he or she required to, protect a tenant from all risks of harm that may be encountered on the premises. Given the deference afforded to the trial judge's findings, we hold that the trial judge did not err in finding that Forrest General did not breach its duty to keep the mechanical room in a reasonably safe condition.[4]

*662 IV. Whether the trial court erred in applying principles of premises liability.
¶ 35. Kirkley argues that the trial court erred by incorporating principles of premises liability law to establish that Forrest General had a duty "to keep its premises in a reasonably safe condition." Kirkley does not identify any principal of premises liability that the trial judge allegedly applied, nor does she cite any authority in support of this argument. The failure to cite authority in support of an issue precludes this Court from considering the issue on appeal. Pickering v. Industria Masina I Traktora, 740 So.2d 836, 848(55) (Miss.1999) (citing R.C. Petroleum, Inc. v. Hernandez, 555 So.2d 1017, 1023 (Miss.1990)). Therefore, this issue is procedurally barred.
¶ 36. Notwithstanding the procedural bar, we find no basis to conclude that the trial judge erroneously applied principles of premises liability. As previously determined, the trial judge applied the correct standard of care that Forrest General was required to act with in regard to the mechanical rooma common area. Furthermore, we suggest, without authoritatively holding, that landlord/tenant law is essentially a subdivision of the broader area of premises liability law. This issue is procedurally barred and wholly lacking in merit.
¶ 37. THE JUDGMENT OF THE CIRCUIT COURT OF FORREST COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR.
NOTES
[1] Kirkley claims that the washer/dryer unit was installed by Forrest General.
[2] From the record, it appears that the person installing the panel was fired before he could complete the project, which was left unfinished until Kirkley fell.
[3] The extent of this tenant's use of the room is not developed in the record. However, the significance of the other tenant's use lies simply in the fact that the tenant was allowed to use the room.
[4] We also note that the "dangerous condition" was arguably created by the actions of Dr. Holifield and his employees. As the trial judge noted, the mechanical room contained only two power outlets at the time Dr. Holifield began using it. As Dr. Holifield's dental practice expanded, his desired use of the mechanical room outgrew the room's capacity for electrical output. While Forrest General may have helped Dr. Holifield install the washer/dryer unit, Kirkley's injuries were not caused by any negligence in the installation of the appliance. Thus, it can be said that the "dangerous condition" was the result of Dr. Holifield's decision to add the washer/dryer unit to the mechanical room, the increased use of the suction pump (necessitating the use of the hot water heater outlet), and the manner in which Dr. Holifield's employees went about plugging the washer/dryer unit into the outlet.

Kirkley essentially seeks to hold Forrest General liable for failing to renovate or improve the mechanical room to accommodate their excessive demand for electricity. However, the lease agreement between the parties does not obligate Forrest General to make improvements, only to "make such repairs and perform such maintenance to the demised premises, and to the building as a whole, ... arising only from the ordinary and reasonable use of the demised premises." Significantly, nothing in the mechanical room was defective or had fallen into disrepair. Moreover, even if an improvement were considered a repair, it is reasonable to conclude that the need for an additional breaker and outlet did not arise out of the ordinary and/or reasonable use of the premises. In sum, it appears that Dr. Holifield's practice simply outgrew its office space. Instead of moving into a larger office, the practice grew into the mechanical room with the consent of a very accommodating landlord. Kirkley's injuries were not caused by a defective condition in the room; she had an accident while confronting a risk of harm that was not unreasonably dangerous.