BROOM, Justice,
for the Court:
Skating resulted in accidental injuries to the plaintiff Willie Myrtis Holley, who filed a tort action in the Circuit Court of the First Judicial District of Hinds County against Funtime Skateland South, Inc., operator of the rink wherein the accident occurred. When the plaintiff rested her case, Funtime requested and was granted a directed verdict. Now on appeal plaintiff contends that her proof made out a prima' facie case which should have gone to the jury.
Testimony of the plaintiff which we accept as true in passing upon the directed verdict, establishes the following facts. An experienced roller-skater, plaintiff went to Funtime’s rink in Jackson and paid an admission charge. While skating on roller skates rented from Funtime, the plaintiff noticed a “catching” of the right skate’s front wheels which were not turning freely. Aware the skate was “catching,” she continued to skate around the rink twice after which she fell. In the fall, her left arm was fractured causing her to incur medical expenses, loss of income, and impairment in the use of her arm.
Sole issue is whether the trial court erred in granting Funtime’s motion for directed verdict. The plaintiff’s declaration charges that Funtime negligently failed to (1) provide proper equipment for her use; (2) warn her of the hazards involved in skating with defective skates; (3) insure that the skating rink was in a safe and proper condition; and (4) provide adequate supervision of patrons of the rink.
Plaintiff’s testimony established that she has been skating for more than forty years. She has skated many times at different rinks and was well acquainted with how skating rinks operate. The time of her injury was not the first time that she had skated at Funtime, and until her accident, she had no complaints concerning the rink’s operation. Called as adverse witnesses were employees of Funtime whose testimony the plaintiff presented. These witnesses outlined maintenance procedures used at Funtime and identified the skates which the plaintiff wore at the time of the accident. Testimony of rink manager Kunz was that he examined the skates immediately after the accident and found nothing wrong with them; this testimony stands undisputed.
In her brief, the plaintiff correctly states, “The operator of a public amusement such as a skating rink has a duty to keep the skating rink and equipment in a reasonably safe condition for invitees. Elias v. New Laurel Radio Station, Inc., [245 Miss. 170] 146 So.2d 558, 92 A.L.R.2d 1065 (1962).” She argues that her evidence made out a prima facie case establishing that Funtime furnished to her a pair of dangerously defective roller skates. She correctly states the rule to be that in passing upon the correctness of a directed verdict, we must accept as true all of the evidence favorable to the plaintiff and reasonable inferences flowing therefrom.
*1137 Upon this record, we think that the lower court correctly directed a verdict against the plaintiff. The significant and critical part of her proof is that after she began to skate and noticed that the front wheels on the right skate were “catching,” she nevertheless continued skating. Aware of the “catching” she skated around the rink two times and fell during her third trip. According to her testimony when she fell, she was leaning heavily on her left leg because she knew that any defect in the right skate might cause her to fall. Her adverse witness, manager Kunz, testified that as he was assisting plaintiff from the floor, she stated to him that she had lost her balance and fell.
Testimony in the record shows that Fun-time routinely examines the skates used at its rink at regular intervals and also when the skates are returned to the counter by customers. These procedures were followed as to the skates used by the plaintiff on the occasion of her accident. When the plaintiff discovered that the right skate was “catching,” she continued skating and made no complaint to anyone at the rink about the skate.
In a prior opinion we dealt with the duties and responsibilities of skating rink operators. In Blizzard v. Fitzsimmons, 193 Miss. 484, 491, 10 So.2d 343 (1942), a case wherein a child was injured, we stated:
On the opening question of liability, there is brought into view two well established rules. One is that a person who participates in the diversion afforded by an amusement or recreational device accepts, and assumes the risk of, the dangers that adhere in it so far as they are obvious and necessary. 4 Shearman & Redfield on Negligence, Revised 1941 Ed., § 647, p. 1566. And the other is that the proprietor engaged in the business of providing public recreation or amusement must exercise a reasonable degree of watchfulness to guard against injuries likely to happen in view of the character of the amusement. Meridian Amusement Concession Company v. Roberson, 188 Miss. 136, 193 So. 335.
Absent from the record before us is any testimony whatever that Funtime ever knew or should have known that the skates used by plaintiff were defective. The skates were visually inspected each time a customer returned them, and in addition to that they were routinely examined each month. During the examinations, the wheels, toe stops and shoe laces were checked and replaced if needed. None of the evidence before us indicates that the procedures followed by Funtime were inadequate or improper. The testimony here is undisputed that immediately after the accident, Kunz personally inspected the skates and found no. defect or malfunction. At trial the skates that the plaintiff wore when she fell were introduced into evidence and identified by Kunz who further testified that they were in the same condition as at the time of the accident. With the skates present in court, they were not shown to be defective in any manner whatever.
Our view of the evidence is that when the plaintiff began to skate and noticed a “catching” or malfunction, she should have ceased her skating and reported the malfunctioning to someone in charge. To the contrary, she continued skating and leaned heavily on her left leg because, according to her testimony, she was aware that a defective skate might cause her to fall and sustain injuries. Aware that the skate was malfunctioning, she assumed the risk that an accident might occur if she continued skating. The following are pertinent excerpts taken from the plaintiff’s testimony:
Q. As I understand your testimony, from the minute you got on the floor, you realized something was wrong with the skates?
A. Shortly after I got on the floor, yes.
Q. And the whole time you were on the floor, you noticed this catching?
A. Yes.
Q. And I believe you told me you went completely around the rink about two and a half times and were on the way around the third time, weren’t you?
*1138 A. Yes.
* % * * * *
Q. And during that entire time, the skates were catching?
A. Yes.
Q. And you realized, of course, being an expert skater, that if something was wrong with the skates, you might fall, didn’t you?
A. Well, I watched how I was skating. I didn’t -try to skate like I normally do.
Q. I understand that but one of the reasons that you were concerned was you knew there was something wrong with the skates and you’re on four wheels and if one of them catches or something, you might fall'. You knew that, didn’t you?
A. Well, not exactly, no, because I was going slow enough I thought I could watch myself.
Q. I understand you were trying to watch yourself, Mrs. Holley, and my understanding is that you were skating mostly with your left leg and using this, left leg to skate with because that skate was all right, is that correct?
A. That’s right.
Q. In fact, you really had all your weight on your left leg as you were skating around there, didn’t you?
A. Yes.
Q. And one of the reasons you were being so cautious and so careful was that you realized the danger involved if there was something wrong with the skates?
A. Yes.
(Emphasis added).
Testimony of the plaintiff shows that she was aware of a malfunctioning skate and appreciated the danger created by that condition. Nevertheless, she deliberately continued to skate thereby exposing herself to the danger which resulted in her injury. Such action on her part obviated any liability on the part of Funtime upon the facts presented, and we cannot say that there was error in granting the directed verdict.
AFFIRMED.
PATTERSON, C. J., SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, LEE, BOWLING and HAWKINS, JJ., concur.