# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-CA-00935-COA

**RETHA CROSS**                                               **APPELLANT**

**v.**

**ATTALA COUNTY COOPERATIVE**                         **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 05/21/2019 |
| TRIAL JUDGE: | HON. GEORGE M. MITCHELL JR. |
| COURT FROM WHICH APPEALED: | ATTALA COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | EDWARD BLACKMON JR. |
| | BRADFORD JEROME BLACKMON |
| ATTORNEYS FOR APPELLEE: | CECIL MAISON HEIDELBERG |
| | TRHESA BARKSDALE PATTERSON |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | AFFIRMED - 07/21/2020 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### EN BANC.

### GREENLEE, J., FOR THE COURT:

¶1. After falling while shopping for flowers, Retha Cross filed a premises-liability action in the Attala County Circuit Court against Attala County Cooperative ("the Co-Op"). The Co-Op moved for summary judgment, which the circuit court granted. Finding no reversible error, we affirm.

### FACTS AND PROCEDURAL HISTORY

¶2. On April 8, 2016, Cross and her neighbor, Lily Sharp, went to the Co-Op in Kosciusko, Mississippi to purchase flowers. While Cross was reaching for a plant, she fell and injured her face and mouth.

¶3.     Subsequently, in June 2016, Cross filed a premises-liability action against the Co-Op. Cross alleged that when she reached for the plant she "tripped across a cracked, chipped, un-level and unmarked area of the . . . store, falling face first onto the concrete floor." According to Cross, the fall occurred when her foot "hit the cracked, chipped, un-level, and unmarked area[.]" She claimed the Co-Op was negligent by failing to (1) maintain the area, (2) clearly mark the area, (3) warn of the hazard, and (4) eliminate the hazard. Pictures of the concrete are in the appendix below.

¶4.     However, during her deposition, Cross stated that she realized there was a transition in the floor in front of the shelf. Cross stated that she did not have difficulty maneuvering the transition. When she stepped onto the upper portion, she did not feel unbalanced. And when she reached for a plant, she was standing in place. Cross stated that a "big knot" in the concrete caused her to fall.[1]

¶5.     During Sharp's deposition, she stated that she did not see how Cross fell. But she also stated that she saw Cross step up, reach for a plant, and fall. Then she stated, "When [Cross] got ready to step up, I guess that rise must have blocked her feet and she fell." When asked what caused Cross's fall, Sharp stated, "The front of her feet hit that step and she just went down."

¶6.     During her deposition, Julie Johnson, the sales manager at the Co-Op, identified a sloped area in a photograph. She also identified a "little crack" and a "seam from the concrete." According to Johnson, the area where Cross fell had been in the same condition

---

[1] Although Cross stated that she realized there was a transition in the floor, she also stated that she did not see the "uneven area" until after she fell.

from 2008 to 2016, and she was not aware of any other complaints regarding the area.

¶7.     In June 2017, A.K. Rosenhan, an engineer and Cross's expert witness, submitted his initial report. Rosenhan indicated that he had visited the site, reviewed the depositions, and evaluated photographs taken after the incident. According to Rosenhan, the proximate cause of Cross's fall was the inclined area, or transition, between the floor and the shelf. He noted that the height differential was approximately one inch. And the edges of the transition were irregular with some loose material. Additionally, Rosenhan noted that "[n]ot only was [the] inclined area a problem to traverse[,] but the shelving was positioned as to cause a customer to reach over the area to access the merchandise."

¶8.     During his deposition, Rosenhan stated that he had inspected the site a year after the incident occurred. He described the area as partially enclosed with a concrete surface. According to Rosenhan, Cross reached for something on a shelf and tripped over the rise in the floor. He noted that people often encounter slight variations or uneven pavement in sidewalks and parking lots. However, according to Rosenhan, the transition was "of sufficient magnitude to cause a tripping hazard."

¶9.     Rosenhan then acknowledged that according to Cross's deposition testimony, she did not have any difficulty traversing the transition. Rosenhan was then asked if traversing the slope was a tripping hazard for Cross. He responded, "Well, she got past it. I'll put it that way." He then admitted that nothing about traversing the transition would have caused Cross to fall as long as she was standing flat on the surface with both feet. Rosenhan acknowledged that Cross stated that she was standing on the surface with both feet. But he

3

suggested that if her foot was off the edge, then she could have lost her balance. Rosenhan admitted that he did not know how Cross's feet were positioned at the time of the incident.

¶10. With respect to the big knot that Cross mentioned during her deposition, Rosenhan stated that he did not see a large raised clump of concrete nor a significant differential in the concrete. However, he stated that he could not inspect the area completely because changes had been implemented since the incident occurred. While examining a photograph, Rosenhan stated that there appeared to be an absence of material, but he did not know the consistency of the surface. Rosenhan reiterated that the discontinuity between the lower and upper surfaces was the dangerous condition. And according to Rosenhan, the area was "not concealed in the sense that you can see it if you're looking for it, but if you're looking straight down when you're standing, you're not going to see it."

¶11. Finally, Rosenhan was asked, "[I]s there anything in particular about the configuration of this shelving and that a customer would reach that led to this fall?" Rosenhan responded, "Not in this case." And he further suggested that reaching would not be problematic in and of itself.

¶12. On April 23, 2018, the Co-Op filed a motion for summary judgment. The Co-Op asserted that Cross could not establish an essential element of her claim. Specifically, the Co-Op asserted that Cross could not establish the existence of a defective, or dangerous, condition. Cross filed a response arguing that a dangerous condition existed and that the Co-Op breached its duty of care to keep the business premises in a reasonably safe condition.

¶13. On May 23, 2019, the court granted summary judgment in favor of the Co-Op. The

4

court held that Cross's injury was not due to a dangerous condition, and there were no genuine issues of material fact. The court further found that Cross "made [a] decision to step upon the area that she alleges caused her fall" and therefore "assumed the risk, if any should actually exist."

¶14. On appeal, Cross claims the circuit court erred by granting summary judgment because there were genuine issues of material fact, and a dangerous condition existed.

## STANDARD OF REVIEW

¶15. The grant of summary judgment is reviewed de novo. *Stuckey v. The Provident Bank*, 912 So. 2d 859, 864 (¶8) (Miss. 2005). Summary judgment is proper when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Robinson v. Martin Food Stores Inc.*, 231 So. 3d 1060, 1061 (¶2) (Miss. Ct. App. 2016) (quoting M.R.C.P. 56(c))*, aff'd by an equally divided court*, 231 So. 3d 980 (Miss. 2017). "The evidence is viewed in the light most favorable to the party opposing the motion." *Id*. at 1062 (¶3) (quoting *Davis v. Hoss*, 869 So. 2d 397, 401 (¶10) (Miss. 2004)). Still, "an adverse party may not rest upon the mere allegations or denials of [her] pleadings, but [her] response must set forth specific facts showing that there is a genuine issue for trial." *Id*. (quoting M.R.C.P. 56(e)).

## DISCUSSION

¶16. In Mississippi, business owners are not required to insure against all injuries; instead, business owners have a duty to invitees "to exercise reasonable or ordinary care or keep the

premises in a reasonably safe condition or to warn of dangerous conditions not readily apparent, which the owner or occupant knows of, or should know of, in the exercise of reasonable care." *Coll v. Wal-Mart Stores East L.P.*, 232 So. 3d 748, 751 (¶9) (Miss. Ct. App. 2017) (quoting *Robinson v. Ratliff*, 757 So. 2d 1098, 1101-02 (¶12) (Miss. Ct. App. 2000)). "Mere proof 'of the occurrence of a fall on a floor within the business premises is insufficient to show negligence on the part of the proprietor.'" *Id*. (quoting *Stanley v. Boyd Tunica Inc.*, 29 So. 3d 95, 97 (¶8) (Miss. Ct. App. 2010)).

¶17. In order to succeed on her premises-liability claim, Cross must show either "(1) a negligent act by the defendant caused [her] injury; (2) the defendant had actual knowledge of a dangerous condition, but failed to warn the plaintiff of the danger; or (3) the dangerous condition remained long enough to impute constructive knowledge to the defendant." *Stanley*, 29 So. 3d at 97 (¶9) (quoting *Byrne v. Wal-Mart Stores Inc*., 877 So. 2d 462, 465 (¶5) (Miss. Ct. App. 2003)). "All three types of premises-liability claims require a showing of a dangerous condition." *Id*. at 97 (¶10). "In other words, 'a property owner cannot be found liable for the plaintiff's injury where no dangerous condition exists.'" *Id*. at 97-98 (¶10) (quoting *Delmont v. Harrison Cty Sch. Dist*., 944 So. 2d 131, 133 (¶5) (Miss. Ct. App. 2006)).

¶18. Cross argues that a genuine issue of material fact exists as to whether there was a dangerous condition in this case. In her complaint, Cross alleged that when she reached for the plant, she "tripped across a cracked, chipped, un-level and unmarked area of the . . . store, falling face first onto the concrete floor." According to Cross, the fall occurred when her

6

foot "hit the cracked, chipped, un-level, and unmarked area[.]"  However, during her deposition, Cross stated that she realized there was a transition in the floor and that she did not have difficulty maneuvering the transition.  Cross then stated that a big knot in the concrete caused her to fall.  But Cross's expert stated that he did not find a large, raised clump of concrete or a significant differential in the concrete.

¶19.    Our law "has long recognized that normally encountered dangers such as curves, sidewalks, and steps are not hazardous conditions.  Often such pathways contain cracks and changes in elevation; and, as such, they do not become hazardous conditions simply because they contain minor imperfections or defects." *Jones v. Wal-Mart Stores East LP*, 187 So. 3d 1100, 1104 (¶14) (Miss. Ct. App 2016) (quoting *Knight v. Picayune Tire Servs. Inc.*, 78 So. 3d 356, 359 (¶9) (Miss. Ct. App. 2011)).  The record in this case indicates that any defect or imperfection in the floor was minor.[2]

¶20.    Although minor imperfections or defects in pathways generally do not constitute dangerous conditions, Cross points out that "[t]he result may be different if a defect is concealed from view."  *Id*. at 1105 (¶16).  During her deposition, Cross stated that she realized there was a transition in the floor.  However, she also stated that she did not see the "uneven area" until after she fell.  Even if Cross did not notice the minor imperfection or defect, there is no evidence that it was concealed. We agree with the circuit court that Cross

---

[2] Cross suggests that there is an exception in the law for minor imperfections and defects in pathways that are located indoors rather than outdoors.  However, Cross does not cite to any caselaw to support her position.  Furthermore, the area at issue in this case was partially enclosed.

failed to show the existence of a dangerous condition in the floor.[3]

¶21. Furthermore, the shelving configuration was not a dangerous condition as Cross suggests. Cross's expert was asked, "Is there anything in particular about the configuration of this shelving and that a customer would reach that led to this fall?" Rosenhan responded, "Not in this case." He further stated that reaching would not be problematic in and of itself.

¶22. Finally, Cross asserts that the circuit court improperly found that she assumed any risk. In its opinion, the court stated that Cross "made [a] decision to step upon the area that she alleges caused her fall. Thus, she assumed the risk, if any should actually exist." Our supreme court has held that "[a]ssumption of the risk applies where a person freely and voluntarily chose to encounter a dangerous condition." *Green v. Allendale Planting Co.*, 954 So. 2d 1032, 1041 (¶25) (Miss. 2007) (citing *Elias v. New Laurel Radio Station*, 245 Miss. 170, 179, 146 So. 2d 558, 561 (1962)). Because there was no dangerous condition, it does not matter whether Cross assumed any risk. *See Wilson ex rel. Purser v. Wal-Mart Stores Inc.*, 161 So. 3d 1128, 1132 (¶12) (Miss. Ct. App. 2015). Cross also suggests that the Co-Op failed to mark or warn of the dangerous condition. But again, because Cross failed to show that a dangerous condition existed, this claim is without merit.

¶23. **AFFIRMED.**

**BARNES, C.J., CARLTON AND J. WILSON, P.JJ., WESTBROOKS, LAWRENCE AND McCARTY, JJ., CONCUR. McDONALD, J., CONCURS IN**

---

[3] Cross asserts that a jury should determine whether a dangerous condition existed. However, this Court has affirmed cases in which a judge determined that a dangerous condition did not exist. *See Stanley*, 29 So. 3d at 98 (¶11) ("In granting summary judgment on behalf of Boyd, the circuit judge found Stanley presented no evidence of a dangerous condition . . . .").

8

**PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**

# APPENDIX



